## MARY MOONEY *vs.* WALTER S. MILLER.

False representations made by the seller to the buyer of a lot of land, upon the land, before the sale, and as an inducement thereto, as to the quantity of wood and hay that could be cut from it, are not actionable; nor his like representations as to the possibility of acquiring adjoining land with buildings thereon, belonging to a third person, although there were no buildings on the lot sold; nor his like representations as to the number of acres in the lot, if he pointed out its boundaries truly.

Tort for deceit by false representations in the matter of an exchange of lands between the plaintiff and the defendant. Trial in the superior court, before *Putnam*, J., who directed a verdict for the defendant and allowed a bill of exceptions in substance as follows :

The parties exchanged conveyances of their respective lands on August 23, 1867, and the representations relied on to sustain the action all had reference to the land conveyed by the defendant. The plaintiff testified that she called on the defendant and told him she had heard that he had land to sell, and he asked her if she did not want to exchange lands with him, and, after she had replied that she did not know, invited her to drive with him to see his land the first wet day, and on the next day, which was rainy, he accordingly drove to it with her and her son. ' On the way out, there was not much conversation. He told her to look at the land on the way, and see if she could see a better piece of land than his. She asked him about the buildings on the land; and he said there were none on it, but there were a house and barn on the adjoining lot, near the corner of his lot, which she could get very cheap, and by getting it of his uncle she could make the lot a square piece of land. He

showed her a handbill posted on the door of this house, an-
nouncing the sale of his uncle's furniture, and as soon as that
was sold, he said, he could get her the house. While they were
on the land, he showed her some pine trees, here and there, as
the boundaries of the lot; but she said that she did not pay
much attention to them. He said that he had got ten tons of
hay off from the lot the past year; that she would get five tons
of rowen; and that there was as much wood on the place as
would pay for the whole land. He picked up a blade of grass
and said, ' See what fine grâss; see that you cut your rowen off
in season.' He told her that there were from sixty-five to sev-
enty-five or one hundred acres in the lot. After they came back
to the carriage, he asked her how much she thought her land
worth, and she said about $1500 to $1800. She said that she
would like to see his uncle before trading; but he said that it
was of no use, that his uncle was sick and could not make a
deed. She wanted time to consult her brother, but the defend-
ant assured her that he would not cheat her, and told her that
there were two men who would get it next day unless she took
it; that they would give him $2500, and he was losing $1000
by giving it to her. She finally agreed to the exchange. The
defendant was to assume a mortgage of $300 on her lot, and
they were to exchange even. An attorney was employed to pre-
pare the deeds, who went in company with the defendant, as
they said, to examine the title to the plaintiff's property. The
deed from the defendant to the plaintiff was read over to her by
the attorney; the lot was described by boundaries, and said to
contain ' twenty-six acres, more or less.' When the attorney
came to the number of acres, she said, ' Mr. Miller, you said
there were sixty-five to one hundred acres;' he said he believed
there were, and putting it in the deed as it was made no dif-
ference."

On cross-examination, the plaintiff testified " that the defend-
ant said he would get the house from his uncle, but she would
have to pay $75 to $100; that she did not believe what he said
about the New York men and his giving her $1000 by the
trade better bargain than any one else; that she could not say

whether she believed there were from sixty-five to one hundred acres in the lot, or not; that it was hard to believe it; that, when she went out to the lot, she walked down through the middle of it; that he showed her the pine trees and some fences, for the boundaries."

James Mooney, the plaintiff's son, who went with them on the land, " substantially confirmed her statements, as to what occurred ;" and testified " that they went down through the middle of the lot; that the defendant showed them where the wood lot stood, and the boundary trees and fences; but that at no time were they in a position to see the whole lot at once; that the defendant pointed out the boundary trees, so that they could see the tops of them, and pointed out also the wall." He testified also " that, when the deed was read over to his mother, his mother asked the defendant if he did not say there were from sixty-five to one hundred acres, and the defendant said that did not mean anything, it was put into the deed so because he did not measure it."

" There was other testimony tending to corroborate the plaintiff's testimony as to some of the statements made to her by the defendant; and evidence tending to show the falsity of such statements, as to the amount of wood standing on the place; as to the plaintiff's getting the uncle's place; and particularly as to the number of acres in the lot; but only so much of the evidence is reported as tends to show the statements which were made by the defendant, and what the plaintiff said as to belief of them.   No claim was made that the boundaries pointed out were not the true ones.   The only evidence in the case regarding the quantity of hay cut there during the summer came from one witness, who testified that the father and brother of the defendant drew away from the lot some six or eight tons, and that he remembered of one two-horse load drawn away by another person, and he could not remember whether more than one load was drawn by him.   It was in evidence that the defendant resided and did business at that time in Springfield, some ten miles from the premises, and there was no evidence that he knew how much hay was cut upon the land."

" No evidence was offered by the defendant; but at the close of the plaintiff's case he asked the judge to rule that she had shown no cause of action ; that none of the representations set up were, under the circumstances, the foundation of an action of deceit. The judge so ruled ; and thereupon a verdict was taken for the defendant; and the plaintiff excepted."

*S. Saunders*, for the plaintiff.

*M. P. Knowlton*, ( *G. M. Stearns* with him,) for the defendant.

CHAPMAN, C. J.   This is an action of tort, founded on certain fraudulent representations alleged to have been made by the defendant to the plaintiff, by which she was induced to purchase a lot of land.   Some false representations of this character are actionable, and others are not.   If they relate to material facts not within the observation of the opposite party, and are made with intent to deceive, they are actionable ; but if the truth can be ascertained by ordinary vigilance, they are not actionable. *Brown* v. *Castles*, 11 Cush. 348.

Upon these principles, it is held that, if the representations relate to the quality and productiveness of the soil, or the number of acres within boundaries which are pointed out, they are not actionable, for they are to be regarded as the usual and ordinary means adopted by sellers to obtain a high price, and are always understood as affording to buyers no ground for omitting to make inquiries. *Gordon* v. *Parmelee*, 2 Allen, 212.   So as to representations of the vendor in regard to the price he paid for the land. *Hemmer* v. *Cooper*, 8 Allen, 334.   These authorities are sufficient to illustrate the principle upon which this case depends.

The plaintiff went with the defendant to see his land.   There were no buildings on it, and the first representation alleged is, that there were a house and barn on an adjoining lot, which the plaintiff could get very cheap, and by getting it of the defendant's uncle she could get a square piece of land.   All that was said on this subject was obviously the expression of a mere opinion, on which a purchaser should not rely.   He also said he got ten tons of hay off the land the past year; but the evidence does not prove that this statement was substantially false,

What he said as to the hay she would get, and the quantity of wood on the place, was the mere expression of an opinion. He pointed out the boundaries of the lot truly, and what he said as to the number of acres the plaintiff should not have relied upon, especially after what occurred when the deed was made. The court ruled correctly that the action was not maintained by the evidence.                               *Exceptions overruled.*