# SUPREME COURT.

JOHN B. G. BABCOCK and DANIEL M. PITCHER agt. WILLIAM LIBBEY, survivor, &c.

*False and fraudulent representations — Fraudulent concealment of facts — Action for damages — Nonsuit.*

. To create a liability for damages consequent upon representations alleged to be false, the plaintiff must show, first, that the representation was untrue; second, that the defendant knew it was untrue; third, that the defendant made the representation with intent to deceive; fourth, that the plaintiffs acted in reliance on the defendant's representation, under circumstances in which they had a right to rely thereon; fifth, that they were deceived thereby, and so induced to change their relation to the subject, to their damage.

The gist of the action for deceit is the fraudulent intent with which the representation is made; that intent is not established by proof merely of the falsity of the representation; knowledge, when it was made, by the party making it, that it was false, must be shown.

The plaintiffs having been applied to, to sell their wool to the steam woolen company, wrote to A. T. Stewart as follows: "The Utica Steam Woolen Company offer to buy of us quite a quantity of wool at four months. Now we understand you are selling their goods, and have a lien, &c., on their mills. · If we sell them the amount of wool over 100 M., we shall be obliged to sell some of the paper, perhaps all. Will you buy it? If so, what will you give for it? If you do not feel like taking hold of it, please give us your views as to their ability to pay, and very much oblige." To which, by direction of defendant Libbey, without any knowledge of Mr. Stewart, the following answer was written, upon which the present action was founded: "Your favor of sixth inst., to our Mr. Stewart, is before us. The Utica S. W. Co. consign to us all their goods, for which we have a ready sale. Sometimes sold largely ahead of their product on order. We can only form an opinion of their management from the period they have been in connection with us. As far as we can judge, they have made money. They say they have done better than at any former period. We have taken considerable orders ahead for their spring production, and anticipate a

good season for their fabrics. They have nothing to conceal in regard to their position, and we do not doubt will fairly answer all your inquiries. We never buy paper, either manufacturers' or traders'."

*Held,* first. That it was true the steam woolen company had so consigned their goods to A. T. Stewart & Co., since August, 1867, and the goods manufactured by the steam woolen company, were sold in advance of their production.

Second. To allow the jury to find that the following statement in defendant's letter, *i. e.,* "As far as we can judge, they have made money; they say they have done better than at any former period," was willfully and fraudulently false, from the ordinary cautions of the commission merchant to his consignor, not to draw drafts in advance of the agreed percentage, or the increase of the firm debt, would be manifestly unsafe. In the absence of preponderating proof in favor of that of guilt, the jury should not be allowed to guess. The presumption of innocence cannot be overcome by showing facts consistent with guilt, but by those which are inconsistent with and negative the former.

Third. Although A. T. Stewart & Co. held, at the time of writing the letter, not only a mortgage upon the real estate and machinery of the steam woolen company, but also a chattel mortgage upon the personal property, of which defendant failed to speak:

*Held,* that the words in plaintiffs' letter, "Now, we understand you are selling their goods, *and have a lien, &c., upon their mills,*" would lead the party to whom such communication was addressed, to suppose that the lien was known to plaintiffs, and that the object of the writer was to ascertain whether A. T. Stewart & Co. would buy the company's paper, and, if not, what were their views as to the ability of the company to pay. No jury would be warranted in finding that the defendant, with intent to deceive, suppressed information as to the liens.

The plaintiffs having been informed as to the lien, and one of them having been in Utica, where the clerk's office of Oneida county is located, before a pound of wool had been delivered, had no right to be deceived. If he made no inquiries, it was such gross carelessness, that it cannot be excused.

The Utica Steam Woolen Company, by its articles of association, ceased to exist February 27, 1866. When the mortgages were made to A. T. Stewart & Co., there was no corporate existence, and no valid liens were thereby created. From the fact that both plaintiffs and defendant dealt with the woolen company, as though its corporate existence had not ended, it is assumed that all were ignorant of its dissolution:

*Held,* that this action, which rests upon an alleged suppression of the truth as to the existence of supposed liens by mortgage, cannot be maintained when no valid incumbrances in fact existed, and when, consequently, no existing actual fact was suppressed.

If the defendant intended to deceive the plaintiffs as to the solvency of the woolen company, supposing it to have been a corporation, which it was not, representing it as solvent, believing otherwise, if it was solvent in fact, by reason of the pecuniary responsibility of those who carried it on, the plaintiffs have sustained no damage by such representation.

If the defendant was guilty of subsequent conduct, which induced the plaintiffs to act upon the belief that they had parted with their goods to a corporation, when it had not, and thus lost their remedies, such subsequent conduct, and not the original representation, must be counted upon, and set forth in the pleadings as the ground of recovery.

No rule of law will justify a recovery upon a true representation, because the party making it supposed it to be otherwise.

If the recommendation is of A, and the sale is made to B, no action can be predicated upon it, unless the party recommending, induces the other to believe B is A. When that does not occur, no action will lie.

*Ulster Circuit, June,* 1877.

ON the trial of this action before judge WESTBROOK and a jury, commencing June 19, and on June 26, 1877, after the plaintiffs had introduced all their evidence and closed the case for the prosecution, the defendant moved for a nonsuit, on the general ground that the testimony was insufficient to establish any cause of action. At the conclusion of the arguments on such motion the opinion was delivered.

*James E. Dewey, Henry Smith & Peter Cantine,* for plaintiffs.

*B. D. Hurlburt, Francis Kernan, Henry E. Davies & F. L. Westbrook,* for defendant.

WESTBROOK, J.—This action, originally commenced against Alexander T. Stewart and William Libbey, and now continued against the latter as the survivor of the then firm of A. T. Stewart & Co., was brought to recover damages which the plaintiffs allege they have sustained by the sale of a large quantity of wool, in November, 1868, to the Utica Steam Woolen Company, and which sale, they claim, was induced by the willfully false and fraudulent representations of the said firm of A. T. Stewart & Co. as to the solvency and

standing of the said steam woolen company, and the fraudu-
lent concealment in the statement of certain facts affecting its
credit.

To sustain this action, the plaintiffs must show that the
defendant, intending to deceive, made a willfully untrue
representation as to the standing of the woolen company, or
fraudulently concealed some fact relating to its solvency,
under such circumstances that the plaintiffs had a right to
rely thereupon ; and that, relying thereon, and being deceived
thereby, they parted with their goods to their injury (*Brief
of Charles O' Conor, in Robinson* agt. *Flint,* 58 *Barbour,*
135, 136).

In November, 1868, the plaintiffs having been applied to,
to sell their wool to the steam woolen company, wrote to
Alexander T. Stewart the following letter :

"OWEGO, TIOGA Co., N. Y., *Nov.* 6, 1868.
"A. T. STEWART, Esq.:

"DEAR SIR.—The Utica Steam Woolen Co. offer to buy of
us quite a quantity of wool, at four mos. Now, we under-
stand you are selling their goods, and have a lien, &c., on
their mills. If we sell them the amount of wool over 100 M
we shall be obliged to sell some of the paper — perhaps all.
Will you buy it ? If so, what will you give for it ? If you
do not feel like taking hold of it, please give us your views as
to their ability to pay, and very much oblige,
            "Yours, respectfully, &c.
                    "BABCOCK & PITCHER."

To which letter, by the direction of the defendant, William
Libbey, as the proof now stands, and without — so far as the
case discloses — any knowledge of Mr. Stewart, the following
answer was written, upon which the present action is founded :

"NEW YORK, *Nov.* 7, 1868.
"Messrs. BABCOCK & PITCHER, *Owego, Tioga Co., N. Y.:*

"GENTLEMEN.—Your favor of sixth inst., to our Mr.
Stewart, is before us. The Utica S. W. Co. consign to us all

their goods, for which we have a ready sale — sometimes sold largely ahead of their product on order. We can only form an opinion of their management from the period they have been in connection with us. As far as we can judge, they have made money. They say they have done better than at any former period. We have taken considerable orders ahead for their spring production, and anticipate a good season for their fabrics. They have nothing to conceal in regard to their position, and, we do not doubt, will fairly answer all your inquiries. We never buy paper, either manufacturers' or traders.'

"We are, respectfully,

"A. T. STEWART & CO.

"*P.* J. DE BROT."

If Mr. Stewart was still living, a preliminary question, could he be held responsible for the tort or deceit of his partners? would be presented. If one member of a firm makes a statement in regard to the business of such firm with another individual, and upon it a third person relies to his injury, then the firm is responsible, because it was a statement — apparently, at least — within the scope of his authority, because relating to the partnership business; and the partner who has formed that relation with the individual making the statement, should rather suffer than the innocent third party who has relied upon such statement. *Griswold* agt. *Haven* (25 *N. Y.*, 595) depends upon this principle, and was obviously rightly determined. Or if any partner falsely represents the character and quality of the partnership property sold, either by express words or by acts done thereto, which make it seem to be what it is not, the partnership is responsible (*Chester* agt. *Dickerson*, 52 *Barb.*, 349); but when a false and fraudulent statement is made by one partner as to the standing and credit of a third person, such statement is so evidently not within the duty and power of the partner — that upon no principle apparent to the court can the other partner be held. It is the separate and

individual wrong of the partner making it, as much so as a separate trespass or battery would be. In view, however, of the death of Mr. Stewart before trial, and the right of the plaintiffs to recover, if at all, against any one of the several defendants, this question has no practical importance.

We are, then, brought to the questions which this case involves upon the merits against the defendant, Libbey. Although that claim has been made, still, in my judgment, there is no sufficient proof to show that any of the statements actually contained in the Libbey letter are false. It was true that the steam woolen company consigned their goods to A. T. Stewart & Co., and had so consigned them since August, 1867, and that the goods manufactured by the woolen company were sold in advance of production. It is not shown that Libbey did not speak the truth when he said, "As far as we can judge, they have made money; they say they have done better than at any former period." To allow the jury to find that such statement was willfully and fraudulently false, from the ordinary cautions of the commission merchant to his consignor, not to draw drafts in advance of the agreed per centage, or the increase of the firm debt, would be manifestly unsafe. Both can be accounted for upon a theory in harmony with the truth of the words; and in the absence of preponderating proof in favor of that guilt, the jury should not be allowed to guess. A bank would not allow a solvent customer, as a rule, to overdraw his account; and the increase of notes at the bank is consistent with an enlargement of business, as well as of loss in its transaction. The presumption of innocence cannot be overcome by showing facts consistent with guilt, but by those which are inconsistent with and negative the former. It is claimed, however, that A. T. Stewart & Co. held, at the time of writing the letter, a mortgage upon the real estate and machinery of the woolen company bearing date January 1, 1868, and then duly recorded in the clerk's office of the county of Oneida, to secure the sum of $200,000, given

to secure present and future indebtedness, and also a chattel mortgage dated February 1, 1868, for the sum of $300,000, upon the personal property, given for a similar purpose, and filed in such clerk's office, of which the defendant failed to speak, and all information in regard to which was fraudulently suppressed.

The point made in behalf of the plaintiffs overlooks the force of the letter written in their behalf. In that, it is stated, " Now, we understand you are selling their goods, *and have a lien, &c., upon their mills*." Would not the party to whom such a communication was addressed naturally suppose that the lien was known, and that the object of the writer was to ascertain whether A. T. Stewart & Co. would buy the company's paper, and if not, what were their views as to the ability of the company to pay ? It seems to us that the letter can only have this reasonable construction, and when what was actually said was, for aught that appears, literally true, and the plaintiffs were fairly referred to the company itself in these words : " They have nothing to conceal in regard to their position, and we do not doubt will fairly answer all your inquiries," that no jury would be warranted in finding that the defendant, with intent to deceive, suppressed information as to the liens. From the language of the two instruments it is apparent that the real estate and the chattel mortgage, covered the same demands. They were both given to secure present and future debts, such as any one might naturally imagine, from the nature of the business, that the manufacturer would owe to the commission merchant to whom the manufactured goods were consigned for sale, and information, therefore, of one which is confessed applies to the other.

In determining the question whether the defendant has been guilty, or not, of a fraudulent concealment of the alleged chattel mortgage, the peculiar form of the expression in plaintiffs' letter must not be overlooked. They declare that they understand not only that Stewart has " a lien " on the " mills," but a something else, which they designate by " &c." It

evidently conveys the idea that plaintiffs knew A. T. Stewart had something affecting the mills besides that which they called "*a lien.*" If the lien was understood to refer to the real estate mortgage the "&c.," which also affected the same property, meant something else in addition. What would the business man, and not the lawyer, to whom the letter was written, naturally suppose the writer meant? Would it not be, as the real mortgage was referred to and covered by the word "lien," that the "&c." referred to the chattel mortgage, as nothing else affected that property? We are not to construe this letter in the light of the evidence given upon this trial, showing that plaintiffs were ignorant of the chattel mortgage, but by the light which the person to whom it was addressed had. Would he understand from the form of expression any more than this: "You have a real estate mortgage, and something else affecting the mills?" Were the expression in that form, we would have no trouble. Is it different? It was a "lien" *and* a something more. What inference could the party writing the answer have drawn other than indicated? If, however, no force is to be given to the expression "&c.," would not the receiver of the letter suppose that the word "mills" included the machinery as well as the building, and as the lien on both was created by the two mortgages, that the expression included the two. One or the other of these impressions, would, it seems to us, be naturally created in the mind of the business man receiving the communication, and hence no fraudulent and willful concealment can legally be found.

Again, the plaintiffs having been informed as to the lien, and one of them (Mr. Babcock) having been in Utica on the 17th of November, 1868, where the clerk's office of Oneida county is located, before a pound of wool had been delivered, had no right to be deceived (*Cowen* agt. *Simpson*, 1 *Esp.*, 290 ; *Brown* agt, *Costello*, 11 *Cush.*, 348, *see p.* 350 ; *Moony* agt. *Miller*, 102 *Mass.*, 217, *see p.* 220 ; *Davis* agt. *Sims & Bates*, 7 *Barb.*, 64 ; *White* agt. *Seaver*, 25 *id.*, 235–242 ; *Clark*

agt. *Rankin*, 46 *id.*, 579). It is almost incredible to suppose that Mr. Babcock did not, on the 17th of November, 1868, inquire at the Oneida county clerk's office in regard to the liens. The excuse for his being at Utica on that day with Mr. Hemingway, the broker, who made the sale of the wool, and that he made no inquiries, is not very reasonable. Assuming, however, that he did not, it was such gross carelessness that it cannot be excused. The plaintiffs having knowledge of one lien, at least, held by the firm of A. T. Stewart & Co., upon the property of the woolen company, and having made no specific inquiry in relation thereto in their letter, but, on the contrary, having referred to it in such a way as to throw the answerer of the letter off his guard in relation thereto, and having abundant means and opportunity to inquire and learn, had no right to assume that because nothing was said in the Libbey letter about liens, there were none. To allow a recovery under such circumstances, for a supposed willful suppression of truth, would be manifestly unjust.

There is another answer to the alleged suppression of the truth by Mr. Libbey, which seems conclusive. The Utica Steam Woolen Company, by its articles of association, filed February 27, 1846, was to exist only twenty years. No steps had been taken to prolong its life. It ceased to live February 27, 1866. From that time its then directors managed its business, and they were empowered by statute (1 *Edmonds' Statutes at Large*, 557, *sec.* 9) to wind up its affairs and distribute its assets. Instead of closing up the company they continued its business, and transacted its concerns as though still in life. The business, after the corporation had ceased to exist, was conducted by Peter Clogher, as agent, as he had done previously. Clogher was clearly not the agent of the dead company, and his occupation of the mills and assumption of the title of agent must have been known to them. The trustees upon such a point cannot plead ignorance. The property was in their hands by operation of law, and they are chargeable with complete knowledge as to its use and of their

status in regard to it. As Clogher, with their knowledge, held himself out to the world as their agent, it follows that, for debts thus contracted, they were clearly, as it seems to us, individually responsible (*Fuller* agt. *Rowe*, 57 *N. Y.*, 23). When the mortgages were made to A. T. Stewart & Co. there was no corporate existence, and no valid liens were thereby created. From the fact that both plaintiffs and defendant dealt with the woolen company as though its corporate existence had not ended, it is assumed that all were ignorant of its dissolution. What *fact*, then, did the defendant suppress in the letter ? If he had said his firm held liens upon the property it would not have been true, for it had none, though it apparently had two. The alleged mortgages were not what they seemed to be, and, if there was any suppression, it was not of the truth but only of what seemed so to be, whilst it was otherwise in fact. It is not seen how such an alleged suppression can give a cause of action, because no existing fact is withheld. On the contrary, the statement of an existing lien by mortgage would not only have been untrue, but would have worked an injury to all parties interested. Had the whole truth been disclosed, the plaintiffs would have been told that the corporation had ceased to live ; that the apparent liens held by A. T. Stewart & Co. were not so in fact, as the corporation had, at the time of the execution of the instruments which it was supposed created them, no legal existence, and that several individuals, abundantly responsible, would be the real buyers of the property sold. That such information was not communicated was doubtless owing to want of accurate knowledge. That, however, and only that, would have been true, and hence it is not seen how this action, which rests upon an alleged suppression of the truth as to the existence of supposed liens by mortgage, can be maintained, when no valid incumbrances in fact existed, and when, consequently, no existing actual fact was suppressed. The plaintiffs, however, answer that a paper purporting to create a lien was on file, and that fact was not

disclosed. This is true; and yet, if the filing of the supposed mortgage had alone been stated, it would have created a false impression, for, without any explanation, it would, contrary to the fact, have been assumed to be a valid lien. The position of the plaintiffs, then, is this: The defendant, to escape the consequences of an alleged suppression of the truth, should have stated an untruth. He should have declared his firm had a lien by chattel mortgage, when it had none in fact. In short, when a fraudulent representation or concealment of an existing fact is required to recover, the plaintiffs propose to make an unstated untruth answer a similar purpose, and they thus in effect argue that an intention to conceal the truth is equivalent to an actual concealment. Such reasoning cannot be sound, for by it the vendor of property, who believed that it had a secret defect, when it had not, the supposed existence of which he carefully and with intent to defraud concealed, would be responsible in damages, though no such defect, as he believed, in fact existed. I am aware that this argument rests upon the position that the chattel mortgage is a nullity, and that this proposition is disputed. Our reasons for supposing so are these: First. It could not affect or bind the property described in it, formerly held by the defunct corporation, for that had ceased to exist, and its trustees had no power to mortgage to continue business. Second. It could not affect subsequently-acquired property, because the authority of Peter Clogher to give it is not shown. Third. It professes to be given for a corporation which had ceased to exist, and for no other party whatsoever. Neither has the fact been overlooked that in 1869, by subsequent agreement between Stewart & Co., the dead company, its shareholders, trustees and creditors, it was treated as, and, in fact, made a valid instrument. That could not relate back to 1868, and make a fact as so existing at that date, which was none actually. If no truth was suppressed in 1868, which was not then a truth, it cannot be made so by what happened in 1869. Whether such after-occurring

events do or do not give a cause of action, will be presently considered.

Assuming now, for the sake of argument, that the plaintiffs have been deceived by the defendant as to the condition of the woolen company, let us next inquire how have they been damnified thereby, for damages must also accrue therefrom to sustain the action (58 *Barb.*, 136–138; 1 *Espinasse*, 290, *note to case; Upton* agt. *Vail*, 6 *Johnson*, 184; *Marsh* agt. *Falker*, 40 *N. Y.*, 562, *see note at end of case*). A reference to the complaint will show that the *gravamen* thereof rests upon the assumption that the woolen company, on the day when the defendant wrote to the plaintiffs, was insolvent, and that it was fraudulently and deceitfully and falsely represented to be otherwise. The sale, it claims, was made in the belief of its solvency, but being otherwise, loss was sustained. To sustain the action, then, a willfully *false* statement must have been made. The woolen company, as has already been seen, was not what both parties supposed it was. It was not a corporation, but an individual organization operated by responsible parties. The sale of the plaintiffs, though, to the Utica Steam Woolen Company, in fact, was not to it as a corporation, but to it as a partnership of individuals, who were abundantly able to pay its debts. Will it be seriously contended that when A fraudulently represents B to C as fit to be trusted, believing at the time B to be a person other than he in fact is, and utterly worthless, in which supposition he was mistaken, B being abundantly responsible, and not the individual he was supposed to be, that A is liable? He certainly would not be, because the representation was true, though it was supposed when made to be false. If, however, the true identity and circumstances of B become known, and A is guilty of the further fraud of concealing the identity, and induces C to act upon such mistake, the remedy must be on the latter fraud, and not upon the original representation, which was true. By the complaint, the case is put upon no such ground. All parties, in Novem-

Babcock agt. Libbey.

ber, 1868, supposed the Utica Steam Woolen Company to be a corporate life, and the fact it was not is not alleged to have been concealed. The fraud is averred to be that *the* company was represented, by means of positive statement and suppression, to have been solvent, when it was otherwise. The truth is, that *the* company was solvent, and hence, if it was by defendant held out to the plaintiffs as responsible, such holding out was true, though the defendant fraudulently made the statement. If the seller of goods ignorantly believes that the goods sold are not what he represents them to be, and the buyer purchases believing them to be what they are represented, the latter could sustain no action upon the ground that the seller meant to misrepresent, but did not. And so in this case, if the defendant intended to deceive the plaintiffs as to the solvency of the woolen company, supposing it to have been a corporation, which it was not, representing it as solvent, believing otherwise; if it was solvent in fact, by reason of the pecuniary responsibility of those who carried it on, the plaintiffs have sustained no damage by such representation. If the defendant was guilty of subsequent conduct, which induced the plaintiffs to act upon the belief that they had parted with their goods to a corporation, when it had not, and thus lost their remedies, such subsequent conduct, and not the original representation, must be counted upon, and set forth in the pleadings as the ground of recovery. There was no misstatement by the defendant in his letter, even though it be capable of the construction claimed by the plaintiffs, and though the defendant intended all the fraud imputed to him. The woolen company was solvent, and the sale to it was caused by no false representation, though it may have been supposed by the utterer thereof so to be. Conceding to the plaintiffs that the proof establishes all they claim, that the letter and the alleged concealment were designed to represent the perfect solvency of the woolen company, when they supposed it to be otherwise, the fact remains that the representation was true in fact. No rule of law, with which I am

acquainted, will justify a recovery upon a true representation, because the party making it supposed it to be otherwise. Such a rule would certainly not sustain an action to recover damages upon goods sold, nor for trusting a party, when the representation was literally true.

We have certainly assumed the liability of the trustees for the debts contracted after the corporation had expired. Their duty was a simple one created by statute. It was to wind up, pay debts and distribute assets. Instead of so doing, the business of manufacture was allowed to be carried on in the property, and the former agent to still act as such. They must be chargeable, as has before been stated, with knowledge of the use of that which is in their care, and of their status in regard to it. The stockholder has no such duty, and without an active participation could not be made liable for debts. But he who holds the property and controls it, can take no such ground, knowing, as they must be presumed to know, Mr. Clogher's position, and that he could not act for a dead corporation, and that he must therefore have acted for them, their individual liability follows.

There is still another thought in connection with the absence of damage, resulting from the alleged fraud, which is worthy of consideration. It has thus far been argued upon the ground taken by the plaintiffs, that the recommendation was of the woolen company, and the sale to it, without regard to the fact of its being or not being a corporation, and we have endeavored to show that no action would lie, because the company, viewed as a partnership, was solvent. Is not this view, however, more favorable to the plaintiffs than they are entitled to? It is conceded that the plaintiffs wrote their letter supposing that the woolen company was a corporation, and that the defendant wrote of it, supposing it to have that status. Assuming these facts, which are conceded, does it not follow that the recommendation was of a corporation, and as no sale was made to it, but to individuals, the trustees as individuals, Clogher or somebody, that such recommendation worked no injury?

Babcock agt. Libbey.

If the recommendation is of A, and the sale is made to B, no action can be predicated upon it, unless the party recommending induces the other to believe B is A.   When that does not occur, it is not seen how an action will lie.   The party chooses his own purchaser ; he determines for himself who and what he is.   He asks about some one who he thinks is going to buy, and  gets a recommendation of that party, and then if whilst supposing he sells, the party recommended, he in fact sells to some other person or persons, what has the recommendation to do with the loss ?   Placing the parties where they stood when the letters were written, and looking into their minds when they used the expression, " The Utica Steam Woolen Company," as we must do, when judging of this case, is it not clear that the inquiry and answer were concerning a supposed entity, when the sale was not in fact made to it ; and no such sale being made to it, is it not also clear that for this reason likewise the action must fail ?

The motion for a nonsuit must be granted.