GEORGE E. HANDY *vs.* EDWIN M. WALDRON.

Although, as a general rule, a vendor's representations as to value even if false and fraudulent are not actionable, value being usually mere matter of opinion, yet he may be liable for a false and fraudulent warranty of the value of a thing sold, for a warranty is not a mere expression of opinion, but the statement of a fact.

An action for deceit will lie against a vendor for a false and fraudulent warranty of the value of bonds and stocks which the purchaser relied on to his injury.

A statement made by a vendor in the sale of stock, that it had always paid a dividend of ten per cent. per annum in quarterly instalments, is a representation as to a material fact on which the buyer has a right to rely.

In an action for deceit, a count which sets out a sale to the plaintiff in one transaction of both bonds and stock by means of false and fraudulent statements as to their value, and also by falsely and fraudulently representing that the stock had always paid a dividend of ten per cent. per annum in quarterly instalments, is not bad for duplicity.

TRESPASS ON THE CASE for deceit. Certified from the Common Pleas Division on demurrer to the declaration:

*May* 12, 1894. TILLINGHAST, J. The first count in the plaintiff's declaration sets out that on the 24th day of May, 1893, the defendant falsely and scandalously deceived the plaintiff by selling him two certain bonds of the Atlantic and Pacific Railway Tunnel Company in consideration of $2000, to said defendant by the plaintiff in hand paid, as and for bonds of the value of $1000 each, and then and there warranting the same to be of the value of $1000 each, to wit, of par value, when in truth and in fact the said bonds so sold and warranted, at the time of sale and warranty thereof, were not of that value as the defendant well knew. The second count sets out that the defendant on the 24th day of May, 1893, falsely and scandalously deceived the plaintiff by selling him 150 shares of the capital stock of the Rhode Island Organ Company in consideration of $1500 to the defend-

ant by the plaintiff, then and there in hand paid, as and for stock of the value of $1500, and then and there warranting the same to be of the value of $1500, to wit, of par value, when in truth and in fact said shares of stock so sold and warranted, at the time of sale and warranty thereof, were not of that value as the defendant well knew. The third count sets out that the plaintiff on the 24th day of May, 1893, had bargained with the defendant to buy of him two $1000 bonds of the Atlantic and Pacific Railway Tunnel Company for a large sum of money, to wit, the sum of $2000, and 150 shares of the capital stock of the Rhode Island Organ Company also for a large sum of money, to wit, $1500, the said sums being then and there good prices and valuable consideration and the full par value of both said bonds and said capital stock, and the defendant then and there well knowing the said bonds and said capital stock to be of a much less value in the market than the par value thereof, then and there falsely, fraudulently and deceitfully offered for sale, and did in fact fraudulently, falsely and deceitfully sell and deliver the said bonds and said capital stock to said plaintiff, who was wholly ignorant of the premises and believed and relied on the promises and representations of said defendant, at the full par value thereof, representing that said bonds and capital stock could not be bought for less than the par value thereof, and that said capital stock had always paid ten per cent. per annum in dividends and had paid the same in quarterly instalments. And the plaintiff in fact saith that he afterwards learned that said bonds could be bought for a sum much less than the par value thereof, to wit, for the sum of $550 each, and that said capital stock could be bought for a sum much less than the par value thereof, to wit, for the sum of $3 per share, and that the same had not paid ten per centum per annum, of all of which he was wholly ignorant at the time of said purchase, and whereof the defendant was well knowing as aforesaid, and the plaintiff has sustained great loss and detriment in and about the purchase of said bonds and of said stock.

The defendant demurs to the first and second counts on

the ground that the representations and warranty therein alleged, refer only to the value of the property alleged to have been sold by the defendant to the plaintiff. He demurs to the third count on the grounds, 1, that the representations therein alleged refer only to the value of the property therein alleged to have been sold by the defendant to the plaintiff, and 2, that the said count contains allegations of two several and distinct grounds or matters in support of the same demand.

In support of the demurrer defendant's counsel contend that as between a vendor and vendee, representations as to the value of the thing sold, although false, and fraudulently made with intent to deceive the vendee, are not actionable ; that such representations are held to be expressions of opinion merely,—"dealers' talk,"—upon which the vendee is not entitled to rely. There can be no doubt as to the correctness of the proposition that mere expressions of belief or opinion on the part of a vendor as to the value of articles sold by him, even though false and fraudulent, cannot be made the basis of an action for deceit. This principle is ordinarily expressed in the old maxim, "*Simplex commendatio non obligat.*" It is based upon the universal practice of the seller to recommend the article or thing offered for sale and to employ more or less extravagant language in connection therewith. As said in 1 Benjamin on Sales, 6th Am. ed. § 640, "the buyer is always anxious to buy as cheaply as he can, and is sufficiently prone to find imaginary fault in order to get a good bargain, and the vendor is equally at liberty to praise his merchandise in order to enhance its value if he abstain from a fraudulent representation of facts, provided the buyer have a full and fair opportunity of inspection, and no means are used for hiding the defects." And the common experience of mankind is that an ordinarily prudent buyer will not rely upon such statements to his hurt. The law, therefore, recognizes the fact that men will naturally overstate the value and qualities of the articles which they have to sell, and that a buyer has no right to rely thereon. *Kimball* v. *Bangs*, 144 Mass. 321. Indeed the decisions have

gone so far under this principle as to hold that, as said by
Holmes, J., in *Deming* v. *Darling*, 148 Mass. 504, "the law
does not exact good faith from a seller in those vague com-
mendations of his wares which manifestly are open to differ-
ence of opinion, which do not imply untrue assertions con-
cerning matters of direct observation, (*Teague* v. *Irwin*, 127
Mass. 217,) and as to which it always has been 'understood,
the world over, that such statements are to be distrusted.'"

But while the law thus countenances a certain degree of
misrepresentation, sometimes termed "privileged fraud," in
commercial transactions, yet it holds the seller responsible if
he falsely represents a particular fact (other than the price he
paid, or an offer to him,) affecting the value, quality or con-
dition of the property in question.   Grinnell on Law of De-
ceit, § 28, and cases cited.   If there is an express warranty
as to quality or value, the thing sold not being open to the
inspection of the buyer, or if any trick or device is employed
by the seller to prevent such inspection, and the buyer relies
upon the warranty or false representations of the seller and
is injured thereby, the latter may be held liable.   But in the
absence of either fraud or warranty, the general rule is that
the vendor is not liable for any allegations as to the quality or
value of the thing sold.   See *Bicknall* v. *Waterman*, 5 R. I.
43 ; *Gordon* v. *Parmelee*, 2 Allen, 212 ; *Mooney* v. *Miller*,
102 Mass. 217 ; *Cooper* v. *Lovering*, 106 Mass. 77 ; *Bishop*
v. *Small*, 63 Me. 12 ; *Brown* v. *Leach*, 107 Mass. 364 ; 8
Amer. & Eng. Encyc. Law, 809, and cases cited in notes 7 &
8.   See also Story on Sales, 2d ed. §§ 360, 361; *Nash* v. *Min-
nesota Title Ins. & Trust Co.*, 159 Mass. 437; *Chandelor* v.
*Lopus*, 1 Smith's Lead. Cas. Hare & Wallace's 7th Amer.
ed. and note on pages *243–4.   The law applicable to a war-
ranty of value is well stated by Campbell, J., in *Picard* v.
*McCormick*, 11 Mich. 68.   He says : "It is undoubtedly true
that value is usually a mere matter of opinion ; and that a
purchaser must expect that a vendor will seek to enhance his
wares, and must disregard his statement of their value.   But
while this is generally the case, yet we are aware of no rule
which determines arbitrarily that any class of fraudulent mis-

representations can be exempted from the consequences attached to others.   Where a purchaser, without negligence, has been induced by the arts of a cheating seller to rely upon material statements which are knowingly false, and is thereby damnified, it can make no difference in what respect he has been deceived, if the deceit was material and was relied on.   It is only because statements of value can rarely be supposed to have induced a purchaser without negligence, that the authorities have laid down the principle that they cannot usually avoid a bargain.   But value may frequently be made by the parties themselves the principal element in a contract; and there are many cases where articles possess a standard commercial value, in which it is a chief criterion of quality among those who are not experts. . . . . . .
We think that it cannot be laid down as a matter of law that value is never a material fact." · See also *McClellan* v. *Scott*, 24 Wisc. 81 ; *Griffin* v. *Farrier*, 32 Minn. 474 ; *Cruess* v. *Fessler*, 39 Cal. 336 ; *Chrysler* v. *Canaday*, 90 N. Y. 272 ; *Eaton v. Winnie*, 20 Mich. 156.

In the case at bar the plaintiff alleges in the first two counts of his declaration that the defendant warranted the bonds in question to be of the values therein named respectively, when in fact they were not of that value, as the defendant well knew.   In short, that the defendant made a false warranty as to the value of said bonds, and the plaintiff relied thereon to his hurt.   We think that when a vendor goes to the extent of *warranting* the value of the article sold, the vendee ordinarily has the right to rely thereon without making further investigation, and if the warranty proves false, to hold the vendor liable.   For to warrant the value of an article is not a mere expression of opinion, but of fact.   It is an express undertaking that the article is of the value placed upon it.   "A warranty is a statement of fact as to an article sold, coupled with an agreement to make the statement good." And we see no good reason for not holding the vendor liable on his warranty as to the value, as well as on his warranty as to the quality of the article sold ; and more particularly where the plaintiff, as in this case, was wholly ignorant of

the premises and believed and relied on the promises and representations of the defendant as to the value of the bonds. Had the defendant by words or acts deceived the plaintiff as to the quality or value of goods sold which were open to his observation and inspection, so that by ordinary diligence he could have ascertained their value, no action could be maintained. But such was not the case here. The defendant knew the value of the bonds but the plaintiff did not, and, so far as appears, had no ready means of ascertaining the same. He trusted to the honesty of the defendant as to the value of the bonds, and was by him deceived and cheated. To uphold such a transaction would be to connive at dishonesty and fraud and bring the administration of law into just contempt. As to the third count, there can be no doubt as to its sufficiency. It sets out not only that the defendant made false and fraudulent representations as to the value of the stock in question, but also stated that it had always paid a dividend of ten per centum per annum in quarterly instalments, when in fact it had never paid such a dividend. The latter was certainly a material fact, upon which the plaintiff had the right to rely. It was not merely an opinion, belief or estimate, but the positive statement of a pretended fact without any qualification, by means whereof the plaintiff was deceived to his hurt. *Bank of North America* v. *Sturdy*, 7 R. I. 109; *Laidlaw* v. *Organ*, 2 Wheat. 178, 195; *Pasley* v. *Freeman*, 3 T. R. 51. In short, it is the case of a seller effecting a sale by means of false and fraudulent representations as to material facts. And in such a case the rule of *caveat emptor* does not apply, but the seller is answerable for his fraud. 1 Parsons on Contracts, (8th ed.), * 578; *Belcher* v. *Costello*, 122 Mass. 189; *Walsh* v. *Hall*, 66 N. C. 233.

The second ground of demurrer to the third count is not well founded. Said count does not set out two several and distinct causes of action, but simply sets out the several false representations of the defendant whereby the plaintiff was deceived and defrauded. That is, it shows the various state-

ments made by the defendant respecting the subject matter of the sale, which go to make up the deceit relied on.

Demurrer overruled.

*Dexter B. Potter,* for plaintiff.

*Walter F. Angell & Edwin P. Allen,* for defendant.