Elerick v. Reid.

## C. F. ELERICK v. DENT REID.

54 579
59 15

1. SALE OF GOODS—*Basis of Action for Deceit.* An action for damages on the ground of fraud cannot ordinarily be based on representations of value, or of the price paid for the property by the seller, where there is no relation of confidence between the parties, and the property is subject to full inspection by the purchaser.

2. PRICE MARKS—*Representations of Value.* Where a stock of merchandise kept for sale in a retail store was marked with price marks, both in letters and in figures, and where the price indicated by the letters was known only to the seller, representations as to what the private marks indicated are not representations as to value, nor expressions of opinion.

3. MISREPRESENTATIONS OF FACT—*Verdict, Sustained.* Where the owner of a stock of merchandise, by fraudulent acts, conduct, and representations, caused a purchaser to understand and believe that the private letter marks on the goods in his stock represented the wholesale cost price and carriage of the goods, and induced him thereby to enter into a written contract for the purchase of the stock of merchandise at such private mark, and where it was shown that such private mark represented the vendor's retail selling price, which was very greatly in excess of the original cost and carriage, *held*, that representations as to what such private mark represented are representations of fact, for which, if false and fraudulently made, the buyer may obtain relief, and that, under the facts in this case, a verdict in favor of the buyer for moneys advanced on the faith of the contract should be sustained.

4. ——— *Competent Testimony.* In such an action, testimony showing the general custom of retail merchants with reference to marking their goods with private marks and in figures is competent.

5. FRAUD—*Competent Evidence.* For the purpose of showing a fraudulent purpose of the seller, the testimony of a witness, who was negotiating for the purchase from the defendant of the same stock of goods at about the same time that the contract between the parties to this case was made, as to the statements, conduct and representations of the defendant with reference to said stock of goods, said private mark, and his declarations and offers with reference to a sale thereof, are competent evidence in this case.

### *Error from Crawford District Court.*

ACTION by *Reid* against *Elerick* to recover $3,000, which plaintiff alleged that defendant obtained from him by fraud.

Judgment for plaintiff. The defendant comes here. The material facts are stated in the opinion herein, filed January 5, 1895.

*Fuller & Randolph*, and *Morris Cliggitt*, for plaintiff in error.

*W. R. Biddle*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: This action was brought by Dent Reid against C. F. Elerick to recover $3,000 and interest, which it is claimed was obtained by the defendant from the plaintiff by fraud. Elerick was a merchant at McCune, Kas., owning a miscellaneous stock of merchandise. Reid had been a farmer in Illinois. He came to Kansas for the purpose of becoming a merchant. He wished to trade a farm belonging to his father-in-law, in Hardin county, Ill., for a stock of goods. At Kansas City, he learned through a real-estate agent of Elerick's stock, and went down to see it. He arrived there on the morning of the 19th of February, 1889, and on the morning of the 20th of February a written contract was signed by the parties, by which it was agreed that Reid should buy Elerick's stock of goods, to be invoiced at Elerick's private letter mark, the key to which was copied in the contract, and in payment therefor was to furnish a deed to the Illinois farm, which was to be accepted as a payment of $9,000 on the goods, and was to deposit on that day, in the bank of J. L. Ward, $3,000, to the credit of Reid. The deposit was so made. The parties were to commence invoicing the goods on the 4th of March following. It was agreed that whatever difference there might be between $12,000, the amount of the farm and money deposited, and the invoice of the goods, should be paid in cash to the party entitled to it. When the parties proceeded to make the invoice, it was discovered that Elerick's private letter mark indicated a price far in excess of original cost and carriage of the goods, and the sum total of the invoice, as made by Elerick, was $25,123.61. The plain-

tiff contends that he bought the goods for cost and carriage, and that Elerick represented to him that the private letter mark represented cost and carriage of the goods. The defendant contends that the goods were to be invoiced at the private letter mark; that a key to that letter mark is contained in the contract, and denies that he ever in any manner represented to the plaintiff that the letter mark indicated the original cost of the goods and carriage. The jury found in favor of the plaintiff — that he was induced to enter into the contract by fraud.

The principal contention in this court on behalf of the plaintiff in error is, that all the statements and representations charged to have been made by Elerick were mere expressions of opinion as to value, which any seller has a perfect right to make; that such expressions of opinion cannot in any case become the basis of an action for fraud. While there is much diversity in the cases as to what is the limit to which a seller may lawfully go, in his representations as to the quality and value of his goods, we do not think this case rests on mere expressions of opinion. It is urged, also, that statements as to the price paid by the seller for the article sold are immaterial, and that the buyer has no right to rely on such statements. This may be true in a general sense, for the matter which concerns both buyer and seller is merely what is the present value of the article sold. Ordinarily, where the goods are open to the inspection of the buyer, he is presumed to be as competent to judge of their value as the seller. "*Venditor*

1. Sale of goods —basis of action for deceit.

*vendit quam maximo potest emptor emit quam minimo potest,*" is the maxim of the law stating the usual and permissible course of dealing, where there is no fraud or relation of trust or confidence. On the one hand, it is held to be permissible for the seller to puff and extol the commodity, and on the other, for the buyer to disparage and detract. However wrong in morals it may be for either party to express anything other than an honest opinion, the courts deem it the wiser and better rule to require each party to a trade to rely on his own judgment rather

than to be permitted, after having made a bad bargain, to come into court on the claim that he relied on the judgment and opinion expressed by the adverse party.

In this case, the stock of merchandise was not sold for an aggregate sum agreed on by the parties. The value of the stock of goods as a whole was to be determined by a private mark used by the defendant. The plaintiff had no knowledge as to what the letters used in making that private mark represented until they were inserted in the written contract. The defendant himself, on the witness stand, testified that Reid did not ask what the private letter mark was, and that he did not tell him, and that the private letter mark in fact represented the selling price of the goods. It appears also from the defendant's own testimony that the goods were also marked in figures at a higher price, and he states that this was done for the purpose of aiding him in selling the goods. The substance, then, of the defendant's claim is, that he sold these goods to the plaintiff at prices concerning which the plaintiff had no knowledge in fact whatever at the time he signed this contract; that he neither knew the price of any one article nor the price of the stock as a whole, but that that price was to be determined by cabalistic marks on the goods, with which the defendant was familiar, though the plaintiff knew nothing. It must be apparent

3. Misrepresenta-tions of fact—verdict, sus-tained. that his statements as to what these letters represented are not statements of value in any sense, but are statements of fact. Neither is a statement as to what the gross valuation of the stock of goods, computed according to the private letter mark, would be the

2. Price marks—representations of value. mere expression of an opinion as to the value of the goods. That sum would depend on quantity and price. The question here is whether there was fraud and deceit through which the plaintiff was entrapped into signing a contract to buy at a scale of prices greatly in excess of the scale of prices he in fact assented to. The jury, both by their general and special verdicts, have found that the plaintiff was so deceived; that the defendant

by his acts and conduct fraudulently induced the plaintiff to believe that the private letter mark indicated cost and carriage, when in fact it indicated a price greatly in excess. That this was a fraud is clear.

Retail merchants in the country buy goods in the cities of wholesalers. The profit of the retail merchant is the difference between the cost at wholesale, with carriage added, and the retail price. Elerick admits that the private letter mark was his selling price, and also admits that the selling price marked on certain articles was from 50 to 100 per cent. more than the original cost. Other witnesses testified that the selling price of certain other articles represented a still greater advance on the cost price. The main issue in the case was as to whether the plaintiff was purposely deceived by the defendant as to the private mark, and the jury resolved the question in favor of the plaintiff. We think this is a finding of such a fraud as is recognized by the law to be a fraud. (*Lord v. French*, 61 Me. 420; *Cofer v. Moore*, 6 S. E. Rep. 306; *Simar v. Canaday*, 53 N. Y. 298; *Griffin v. Farrier*, 21 N. W. Rep. 553; *Hendy v. Waldron*, 29 Atl. Rep. 143; *Speed v. Hollingsworth*, ante, p. 436.)

Having determined that the fraud charged is actionable, and there being ample proof to support the verdict, the other questions discussed in the briefs appear of minor importance. At the time the invoice was being taken, Mr. Hayes, a hardware dealer, was called in by the plaintiff to assist him in determining the cost price of some of the goods. The plaintiff, over the objection of the defendant, was permitted to state, "I think the sprinklers, according to Hayes's mark, was $1; according to the private cost mark, $2.25." It is objected, and with 'reason, that this is not a proper mode of proving value; but the defendant, on cross-examination, testified with reference to this same matter: "When we went to invoicing, I told Mr. Hayes to put down what he thought was actual cost of the goods." It appearing that Hayes was acting in the matter for both the parties in placing a valuation on the goods, there was no error in admitting proof as to

what he did in the presence of the parties in accordance with
their request. C. A. Giles and H. P. Grund, both mer-
chants, were examined with reference to the custom of mer-
chants in marking goods with private marks and figures.
Grund testified that he thought he could see an object in
marking goods in the way they were marked by Elerick, but
was not asked to explain what the object would be. He fur-
ther stated that he did not think it would subserve any pur-
pose in the ordinary way of transacting retail business. We
perceive no error in the admission of this testimony. The
custom of merchants with reference to the use of
4. Competent
   testimony.          private marks on their goods was a proper sub-
ject of inquiry. The statement of T. H. Riddle,
with reference to the valuation placed on the stock of mer-
chandise by Elerick in a letter, which was not shown to have
been lost or destroyed, was improperly admitted; but, in the
view we take of this case, the statement was quite unimpor-
tant. Riddle's statement was that the valuation placed by
Elerick on the stock was about $12,000. As Riddle was act-
ing for Elerick in finding a buyer for the goods, and espe-
cially in view of the fact that all of the testimony in the case
seems to indicate that the stock was regarded by everyone
who knew anything about it as about a $12,000 stock, and as
Elerick nowhere swears that it was worth more than that
sum, we think the error in admitting the testimony unimpor-
tant.

C. M. Walker, a witness for the plaintiff, testified concern-
ing negotiations between himself and Elerick with reference
to the sale of the same stock of goods to him. He stated
that Elerick gave him the key to his private mark; that he
examined the goods, and the marks on them; that Elerick
stated to him that the private mark represented the actual
cost of his goods with freight added; that after examining
the goods, he called Mr. Elerick's attention to the fact that
the goods were marked at more than wholesale cost; that he
found some of them, in his judgment, marked 500 or 600 per
cent. above cost and carriage. The witness was permitted to

go into the details of his negotiation with the defendant. His testimony was important, and doubtless had its weight with the jury. Was it admissible in a case of this kind? The transaction was almost contemporaneous with that of Reid. Walker's first interview with the defendant was in the fore part of February, 1889, and he was there again on the 20th and 21st of February, just after Reid left. We think the evidence of this witness was proper for the purpose of showing fraud. In actions of this kind, the range of inquiry must necessarily be wide. The efforts of Elerick to sell to Walker at his private letter mark, and his statements to him as to what that letter mark represented, bore directly on the question whether his goods were marked as they were for the purpose of perpetrating a fraud on anyone he might be able to entrap. In proving fraud, it is always necessary to ascertain the motive actuating the party charged with the fraud. That motive may be proven by any act or declaration which fairly tends to throw light on the case. Surely, the attempted dealings of the defendant with other persons, in which he undertook to make the same kind of a bargain as that made with the plaintiff, are well calculated to explain his motives in this transaction.

5. Fraud—competent evidence.

Finally, it is contended that the court erred in its instructions to the jury; that it appeared from the evidence that Reid had a full and fair opportunity to inspect the goods; that the parties dealt on absolutely equal terms, and that if the plaintiff made a bad bargain, it was his own fault. Here, again counsel falls into the same error of assuming that any price was agreed on by the parties. If Reid had been furnished with the key to the mark and had then gone through the stock, and examined for himself, observing the kind and quality of the goods and the prices marked on them, there would be force in this claim, but instead of that, the defendant left Reid with his clerk, McCauslin. When Reid asked McCauslin the price of an article, McCauslin looked at the mark on it, and answered the question, thereby conveying to Reid's mind the impression that the mark indicated the cost, when in fact the

private mark indicated a far greater price. ' The defendant did not attempt to show what honest purpose the double marking of his goods could subserve. His own explanation of it was that the marking in figures helped to sell the goods. McCauslin's explanation was, that it was put there for a blind. The jury found that the goods were marked for the purpose of committing a fraud on the plaintiff or some one else, and there would seem to be no doubt from the whole record that in this conclusion they were correct. We find no substantial error in the record, and the judgment is affirmed.

All the Justices concurring.