FRANKLIN WORCESTER & another *vs.* GEORGE W. COOK.

Middlesex.    November 13, 16, 1914. — April 1, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Agency*, Existence of relation, Fidelity of agent. *Evidence*, Of agency, Declaration of deceased person. *Deceit*.

At the trial of an action of tort for deceit practiced upon the plaintiff by an alleged agent of the defendant in negotiations resulting in the sale of timber to the plaintiff, it appeared that the alleged agent had died and there was evidence that, before the commencement of the action, he had stated to witnesses for the plaintiff that the defendant had "asked him to sell" the timber, "to find a customer for it," and that, if he should do so, the defendant "would make it right with him," that, after the close of the transaction, he had stated that he had said to the defendant that he "thought he had very small pay for the work he had done," and that the defendant had paid him $150 and had said that that was all he was willing to allow him. The receipt given to the defendant by the alleged agent was written by the defendant and purported to acknowledge "payment in full for services rendered in connection with the sale of the" lot. There also was evidence that the plaintiff introduced himself to the defendant at the time of the sale and stated that he was the man who had been talking with the alleged agent "who claimed to be authorized to sell the timber," and informed the defendant that he was there "according to arrangements made by" the alleged agent "to complete the transaction, if everything, the representations made, were truthful and that he had authority to sell the lot, and" the defendant "could give . . . a good title to the property;" and that the defendant said "I guess everything is all right." *Held*, that it was a question for the jury as to whether the alleged agency existed.

In an action of tort for deceit practiced by an alleged agent of the defendant in negotiations resulting in the sale of standing timber to the plaintiff, upon evidence tending to show that, before the sale, the plaintiff had some talk with the agent about his helping the plaintiff to sell the timber, and that, two or three months after the sale, he paid the agent $250 "for services in anticipation," it cannot be ruled as a matter of law that the agent was disqualified from acting for the defendant.

Where, at the trial of an action of tort for deceit alleged to have been practiced upon the plaintiff by an agent of the defendant to induce him to purchase the standing timber on certain lots of land of the defendant, there is evidence tending to show that one could not determine by inspection how many acres of standing timber there were in the tract on account of the character of the timber and the configuration of the lots, and that the agent made false statements which reasonably were understood by the plaintiff to mean that an actual survey had been made of the lots and that they contained about ninety acres, whereas they contained only sixty-five acres, a verdict should not be ordered for the defendant, because it cannot be ruled as a matter of law that the false representations were

not actionable, and a finding is warranted that the plaintiff acted reasonably in relying on the agent's statements and that the statements were untrue.

CONTRACT OR TORT for damages caused by alleged false representations made by one Andrew T. Bemis to the plaintiffs in negotiations resulting in the purchase on April 18, 1910, by the plaintiffs from the defendant, who was the administrator of the estate of Charles Brewer, late of Petersham, of certain standing timber. There were two counts in the declaration. The first count was in contract and the second was in tort for deceit. Writ dated October 20, 1911.

Previous to the trial of the case, the plaintiffs waived the first count of the declaration.

The case was tried before *Brown,* J. The testimony of the plaintiff Franklin Worcester in relation to a payment by him to Bemis, referred to in the second numbered paragraph of the opinion, was in substance that, preceding the sale, he asked Bemis if he would help him to market the timber in case the plaintiffs should buy it from the defendant, that, after the sale by the defendant to the plaintiffs and "before there was even a beginning of any marketing of the timber," he paid Bemis $250, "not for selling this timber, but in assisting me in the operation of the timber. I paid him for services in anticipation."

Other material evidence is described in the opinion. At the close of the evidence the judge ordered a verdict for the defendant and reported the case for determination by this court, a new trial to be ordered if the verdict should not have been ordered for the defendant; otherwise, judgment to be entered for the defendant.

*C. F. Choate, Jr.,* for the plaintiffs.

*H. Parker,* (*C. F. Rowley* with him,) for the defendant.

DE COURCY, J. The principal question raised by the exceptions is whether there was evidence on which the jury could find that Bemis, when he made the alleged representations with respect to the survey and acreage of the timber, was the agent of the defendant. There was evidence of the following facts. The Brewer heirs had empowered Cook to deal with the property as though he were the owner. In October, 1909, he mailed to all the lumber men in New England printed circulars describing the quality and estimated quantity of the growth. Andrew T.

Bemis, who was in the business of cutting off lumber, and who bought and sold some as well, brought this timber to the attention of the plaintiffs and secured them as purchasers after a number of conversations on the lot and elsewhere. On April 18, 1910, the plaintiff Franklin Worcester (hereinafter referred to as the plaintiff) met the defendant according to arrangements made by Bemis and completed the purchase.

1. The letters in the record which passed between Bemis and the defendant from November 8, 1909, to February 15, 1910, seem to indicate that at least during that period Bemis was not acting as the defendant's agent, but as a broker or middleman endeavoring to bring the parties together. There was other evidence, however, bearing on the issue of agency. Bemis died on January 30, 1913, and declarations made by him before the commencement of this action were admitted under R. L. c. 175, § 66. For instance he said that "Mr. Cook asked him to sell" this lot, and that "he saw Mr. Cook, and Mr. Cook asked him to find a customer for it." Emma B. Bemis, who testified to this, said further that in July she heard Bemis say to the defendant that "he thought he had very small pay for the work he had done," and that Cook at that time paid him $150, and said that was all he was willing to allow. The receipt which Bemis signed was prepared by the defendant and purported to be "payment in full for services rendered in connection with the sale of the Brewer wood lot." One Bowen testified that Bemis had told him, among other things, that "Mr. Cook wanted he should sell it [the timber lot] for him if he could." Mr. Garrity, formerly counsel for the plaintiffs, was told by Bemis that Cook, at their first interview, told him (Bemis) that if he should find a purchaser he (Cook) would make it right with him. Finally, when the plaintiff introduced himself to the defendant on April 18, 1910, as the man who had been talking with Mr. Bemis, "who claimed to be authorized to sell the timber on the Brewer estate," he informed Cook that he was there "according to arrangements made by Mr. Bemis to complete the transaction, if everything, the representations made, were truthful, and that he had authority to sell the lot, and Mr. Cook could give me a good title to the property;" and the defendant said in reply, "I guess everything is all right."

The truthfulness of this testimony and its weight as compared with that introduced by the defendant is not for us to determine. We are of opinion that it entitled the plaintiffs to go to the jury on the question of Bemis's agency.

2. It appeared in evidence that the plaintiff himself, before buying the lot, had some talk with Bemis about helping him to sell the timber; and that he paid Bemis $250 in June or July, for services. It is strongly argued that Bemis was disqualified by this transaction from further acting as agent of the defendant. But it cannot be so ruled as matter of law on the facts disclosed by the record as it now stands. See *Rice* v. *Wood,* 113 Mass. 133; *Quinn* v. *Burton,* 195 Mass. 277; *Little* v. *Phipps,* 208 Mass. 331; *Ebert* v. *Haskell,* 217 Mass. 209.

3. There was evidence that Bemis assured the plaintiff that an actual survey had been made of the timber lots, and that there were about ninety acres in the two lots. While Bemis did not expressly state that this acreage was the area ascertained by the survey, it could be found that his language reasonably conveyed that meaning to the plaintiff, and both men used that figure in estimating the quantity of timber that could be cut. This distinguishes the case from *Mabardy* v. *McHugh,* 202 Mass. 148, *Mooney* v. *Miller,* 102 Mass. 217, and *Gordon* v. *Parmelee,* 2 Allen, 212, notwithstanding that the boundaries were designated to the plaintiff; and brings it within the principle of *Roberts* v. *French,* 153 Mass. 60.

It should be added that it does not appear that the defendant was informed that Bemis had told the plaintiff that the lot had been surveyed; and hence the defendant's responsibility for that representation cannot rest on ratification. *Combs* v. *Scott,* 12 Allen, 493.

4. It could be found that the representations made by Bemis with reference to a survey were rightly relied upon by the plaintiff as an inducement to purchase. There was evidence that one could not determine by inspection how many acres were in the lots, on account of the character of the timber and the configuration of the land. And a definite statement of measurement well might divert a purchaser from making further investigation.

5. Finally there was evidence that the representations were untrue. Instead of a timber acreage of ninety acres there were

only about sixty-four, as shown by a survey made for the defendant before July, 1909.

In accordance with the report the verdict ordered for the defendant must be set aside, and a new trial granted.

*So ordered.*