## EUSTACE J. COOPER *vs.* LUKE W. LOVERING.

**A.,** who had never been on the oil lands, employed his brother to examine them; the brother wrote letters to him describing certain property as good, and saying that it might be sold for a higher price than he had the refusal of it for; A. read these letters to B., who told A. that, if he bought, it would be because of his confidence in him, to which A. replied that his brother was trustworthy; and because of these and other like statements B. bought the property. In an action for the price of the property by A., to which B. set up in defence fraudulent misrepresentations by A., the judge instructed the jury that a fraudulent misrepresentation which would enable B. to avoid the contract must be a misrepresentation of matters of fact and made by A. as of his own knowledge; that no expression of opinion or judgment made in good faith, and no statements made in good faith, and known to be founded on the representations of others, would constitute such misrepresentation; that no statements as to the value or cost of the property, or of offers made therefor by others, if untrue, were sufficient to sustain this defence; that if A. made false representations as to the contents of the letters, or in bad faith withheld any information therein contained upon any material particulars, the allegations of fraud were sustained; but that if he truly read the contents thereof, believing them to be true, having no personal knowledge himself of the property, and so representing to B., such acts would not be fraudulent. *Held*, that B. had no ground of exception.

CONTRACT on a promissory note, given by the defendant to the plaintiff. Answer, that the note was given for the purchase of oil property, so called, in Pennsylvania, concerning which the plaintiff had made fraudulent representations.

At the trial in the superior court, before *Reed*, J., the evidence tended to show " that the plaintiff, who had never himself been to the oil regions, employed his brother, who was going from Boston to St. Louis, where he resided, to stop, on his way, among the oil lands of Pennsylvania, and, if he found anything valuable, to inform him thereof; that the plaintiff received letters from his brother, informing him of the property in question; that these letters were read by the plaintiff to the defendant, and contained statements that the land was very valuable for farming purposes, that there were indications of oil upon it, that there was great excitement in the neighborhood, caused by the oil discoveries, that the land in question might be sold for a higher price than he had agreed to give, and that he had the refusal of it, or a bond for a deed of it, at the price of $18,000 for fifty acres; that shortly afterwards another letter was received by the plaintiff from his brother, informing him of another piece of land for the same price,

a part of the same farm, consisting of fifty acres, the indications of oil on which were quite equal, if not superior, to those upon the former piece ; that this letter, or extracts thereof, were also read by the plaintiff to the defendant ; that the defendant told the plaintiff that, if he bought, it would be because of his confidence in him ; that the plaintiff told the defendant, in substance, that his brother was trustworthy and reliable ; and that, because of these and other like statements, the defendant was induced to and did buy."

The testimony of the plaintiff tended to show that " he had never, at the time of the interview between himself and the defendant, and at the time of the contract, been upon or into the neighborhood of the land in question ; that the defendant knew this ; and that he believed and relied upon the representations contained in the letters."

The judge, among other instructions, instructed the jury " that a fraudulent misrepresentation which would enable the defendant to avoid his contract must be a misrepresentation of matters of fact, and made by the plaintiff as of his own knowledge ; that no expression of opinion or judgment made in good faith, and no statements made in good faith, and known to be founded on the representations of others, would constitute such misrepresentation ; that no statements as to the value or cost of the property, or of offers made therefor by others, if untrue, were in law fraudulent or sufficient to sustain this defence ; that if the plaintiff made false representations as to the contents of the letters from his brother, or in bad faith withheld any information therein contained upon any material particulars, the allegations of fraud were sustained ; but that if he truly read or stated the contents thereof, relying upon them, and believing them to be true, having no personal knowledge himself of the property, and so representing to the defendant, such acts would not be fraudulent." The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*I. Story*, for the defendant.

*J. S. Abbott*, for the plaintiff.

AMES, J. In order to make out the charge of deceit, whether in support of an action or as a ground of defence, it is generally

necessary to show a misrepresentation, by the party charged, of a material fact, not within the observation of the other party, the person making the representation either knowing it not to be true, or having no knowledge on the subject and making it with utter disregard to its truth or falsity. *Small* v. *Atwood*, Younge, 407, 461. *Brown* v. *Castles*, 11 Cush. 348. *Stone* v. *Denny*, 4 Met. 151. It has been repeatedly decided that representations of a vendor as to the value or cost of the property to be sold, or as to offers for it made by others, even though false, are not representations upon which a purchaser ought to rely, and are not sufficient to furnish any ground of action or defence. *Hemmer* v. *Cooper*, 8 Allen, 334. *Manning* v. *Albee*, 11 Allen, 520. *Mooney* v. *Miller*, 102 Mass. 217. It does not appear from the bill of exceptions in the case at bar, that the plaintiff had any knowledge or information as to the oil lands which it was proposed to buy, except what he derived from letters received from his brother ; or that he made any representations of any kind to the defendant, except as to the contents of these letters, and as to the good faith with which they were written. If he intentionally misstated their contents, that would amount to a misrepresentation of a material fact, and would come within the established definition of deceit. If he knew that the information contained in the letters was false, and that the writer was not " trustworthy and reliable," it would of course be fraudulent if by words or acts he induced the defendant to act and rely upon them, and to incur damage and loss by such reliance. But if he himself believed the information contained in the letters to be true, and the writer to be entitled to confidence, and if he truly and honestly stated the contents of the letters, and explained to the defendant that he had no other personal knowledge on the subject matter, such representations on the plaintiff's part would not be fraudulent. Such we understand to have been in substance the instructions of the court, which appear to have been all that the circumstances of the case, and the nature of the alleged misrepresentation required. We do not think that the jury were misled.

*Exceptions overruled.*