FANNIE D. WAY, executrix, *vs.* GEORGE H. RYTHER
& others.

Suffolk.   November 15, 1895. — February 25, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Sale* — " *Window Frames set with Glass* " — *Vendor and Vendee* — *Fraud.*

The words "window frames set with glass," in an offer of sale, embrace the sashes in which the glass is set, and also the frames.

The mere statement of a vendor, in an offer of sale, that the goods " were billed to me " at a certain sum, which is in excess of the sum named in the bill, is not such evidence of fraud as will constitute a defence to an action upon a promissory note given by the vendee for the price of the goods; otherwise, if the circumstances show that the affirmation was meant and interpreted as a statement of the contents of a specific document.

CONTRACT against the makers and indorsers of a promissory note for $390, dated November 18, 1892, and indorsed to John M. Way, the plaintiff's testator.   Trial in the Superior Court, before *Blodgett*, J., who allowed á bill of exceptions, in substance as follows.

This action was brought originally by the payee of the note, John M. Way, who subsequently died, and his widow, the plaintiff, who was the executrix of his will, was duly admitted to prosecute the action.   The signatures to the note were admitted. The defences were failure of consideration and false and fraudulent representations made by the payee at the time of obtaining the original note, of which the note in suit is a renewal.

The maker of the note testified that he had previously had many financial dealings with Way, and that he received from Way the following letter, which was introduced in evidence: " I have about sixty new window frames set with glass, said to be double thick German first quality.   If you are dealing with any carpenters or builders, you could trade them to them.   I ordered them, and after they were ordered I concluded to have French plate instead.   So I did not use them.   They were billed to me at three hundred and ninety-four dollars and fifty cents. I will sell them at three hundred dollars, and will put seven hundred with them, and take two notes of five hundred each on

two and three months, satisfactorily indorsed." He further testified that, in consequence of receiving that letter, he called upon Way in reference thereto and had some conversation with him in relation to the proposed sale of the property, and asked to see the bill referred to in the letter, that Way replied that he would look the bill up and show it to him; that subsequently the witness again called upon Way and asked to see the bill, and also asked permission to examine the property mentioned in the bill; that Way replied that he could not find the bill, but that the witness could rely upon what he stated about the property, and that the property in question was packed away where he could not get at it, but that it was first class in every way, the windows being good, and everything as represented; that thereupon the witness, relying upon these statements made to him by Way, and induced thereby, signed two notes for $350 each and one note for $300, and received from Way $700 in cash; that the two notes for $350 each had since been paid, and the note for $300 was renewed at its maturity by a new note payable one month from its date, which was the one now in suit; that prior to the maturity of the note for $300, and before giving the note in suit, the witness made several attempts to see the property bought of Way, but was informed by Way that he could not get at it, and, when the note in suit was given, the witness had not seen the property; that the note in suit was made up of $300 representing the old note, $75 representing a double harness then sold by Way to the witness, and fifteen dollars interest in advance; that the harness was subsequently taken back by Way in like good order and condition as when received by the witness; that afterwards the witness saw the property in the barn of Way, and the windows were packed in bundles, and some of the glass was broken, and when he finally obtained the property he received only fifty-eight window sashes with the glass therein, which was more or less broken, but that he never received any window frames; and that, after a great effort, he finally disposed of the property and received for it $25, being the most he could get, largely on account of its damaged condition.

One McNutt, a witness called by the defendants, testified that his firm made for Way fifty-eight window frames, sash and glass,

which were billed to Way by McNutt's firm for $378.36; and the original bill of the same for that amount was offered in evidence and admitted. He further testified that a window frame, in the language of builders and carpenters, is understood to be entirely distinct from a window sash, the frame being the part which is set into a building, and the sash being the movable portion of the entire window; and that the frames in question constituted a large part of the value of the complete windows.

A witness for the plaintiff testified that the defendant Ryther went to Way's barn and saw the windows packed away in one of the stalls; that at the time the glass in the outside windows of the packages' was broken; and that they had been broken for the purpose of examination by experts. There was also evidence tending to show that, during Way's lifetime, Ryther never said anything to Way about the broken condition of the glass. Thereupon the judge ruled that the construction of the letter sent by Way to Ryther was a matter of law for the court; that the words "window frames set with glass" did not mean what is known technically to carpenters and builders as frames, but did mean simply the sash and glass; and that therefore, under the contract, Ryther was not entitled to receive technically window frames, but only what he did receive, namely, sashes and glass. To this ruling the defendants excepted.

The judge instructed the jury that Way's representation that the property was billed to him at $394.50 was only trade talk, and a representation which, though false, would not entitle the defendants to any reduction in the plaintiff's claim; and the defendants excepted.

The jury returned a verdict for the plaintiff, in the sum of $250; and the defendants alleged exceptions.

*E. R. Champlin*, for the defendants, submitted the case on a brief.

*J. W. Keith*, for the plaintiff.

HOLMES, J. The testimony offered by the defendant Ryther, that the words "window frames," as used by builders and carpenters, signify a part distinct from the sashes, only showed that to that extent builders and carpenters use English with accuracy. When however the expression is "window frames set with glass," it necessarily embraces the sashes in which the glass is set imme-

diately, and we think, as matter of construction, even apart from the evidence, also embraces the frames. The word " frames " cannot be neglected simply because other words show that the contents of the frames are included. The technical meaning of the well known word is not overridden by the abbreviation in the mode of statement, which, taken literally, might signify that the frames referred to were the structures in immediate contact with the glass. We believe that frames as well as sashes are a well known article of merchandise, and according to the testimony of McNutt, which probably would not be controverted, they constitute a large part of the value of the completed window.

The question as to whether there was evidence of fraud may or may not be material at another trial. The mere statement that " they were billed to me at three hundred and ninety-four dollars and fifty cents," does not go beyond the limits allowed to vendors by what long has been understood to be the law of this Commonwealth. *Hemmer* v. *Cooper*, 8 Allen, 334. *Manning* v. *Albee*, 11 Allen, 520, 522. If the evidence should show that the inquiries for the bill informed Way that his statement was interpreted as affirming that the contents of the writing were in accordance with the statements in his letter, that Way's statement that he could not find the bill (which was produced at the trial) was false, and that Way purposely kept the bill out of the defendant's hands in order to prevent his discovering the truth, the case would present a different aspect. See *Cooper* v. *Lovering*, 106 Mass. 77, 79. The letter under such circumstances, adhered to without correction, becomes a more deliberate affirmation, and gains in its power to deceive. We have no disposition to extend the decisions in favor of vendors' representations beyond the limits to which they have gone. See *Roberts* v. *French*, 153 Mass. 60, 63.

*Exceptions sustained.*