LYONS BURIAL VAULT COMPANY *vs.* EDGAR R. TAYLOR
& others.

Suffolk.   January 8, 9, 1908. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Fraudulent Representations. Contract,* Evidence of fraud to avoid. *Deceit,* As
matter of defense.   *Sale,* Seller's commendation.

In an action for the alleged breach of an agreement by which the plaintiff sold to the defendant the right to manufacture and sell within certain territory portable cement burial vaults, on which the plaintiff held a patent, and the defendant agreed to manufacture three hundred of the vaults before a day named and agreed to pay to the plaintiff $2 royalty on every vault manufactured under the patent, and also to recover a balance of a cash payment alleged to be due under a lease in writing of certain moulds for making cement burial vaults under the patent, the defense relied upon was that the defendant was induced to execute the contract and lease by false and fraudulent representations on the part of the plaintiff and its agents.   There was evidence that the defendant was not only unskilled in the matter but was wholly ignorant of the prices and values of the vaults, that the plaintiff's agent represented to the defendant that the vaults were water tight, that water or moisture could not enter them and that only one barrel of cement was required to make a vault, and that these representations were false and were known to the plaintiff's agent to be false, that the defendant said to the agent that he did not believe that the vaults could be made waterproof and the assurance was repeated, also that the statements of the agent were accompanied by false statements of the great value of the vaults, of the prices at which they could be and were sold and of the extent of the demand for them, the vaults being comparatively new articles not commonly sold in the market.   *Held,* that, although the statements of the value of the articles, however exaggerated, might be mere seller's commendation and insufficient to show actionable fraud, the evidence as to the statements of the plaintiff's agent went much further than this, and there was evidence for the jury that the execution of the instruments sued on was procured by fraud,

and that it was for the jury to determine what opportunity the defendant had for investigation and how far he was justified in relying upon the statements of the plaintiff's agent.

CONTRACT to recover $600 royalty upon three hundred burial vaults under the second clause of a contract in writing, which is printed below, and also a balance of $40 alleged to be due for the use of two sets of burial vault moulds under a lease in writing, also printed below. Writ in the Municipal Court of the City of Boston dated May 29, 1906.

The contract declared upon was as follows:

" This agreement made this fifteenth day of October, 1902, between the Lyons Burial Vault Company, of Lyons, Wayne County, New York, of the first part, and E. R. Taylor & Company, their heirs and assigns, of Boston and Newport, party of the second part, witnesseth:

" That whereas Letters Patent of the United States for an improvement in Cement Burial Vaults were granted to Benjamin F. Lockwood and by him assigned to the Lyons Burial Vault Company, and, as the party of the second part, is desirous of manufacturing said patented Cement Burial Vault. Now, therefore, the parties have agreed as follows:

" First. That the party of the first part hereby licenses and empowers the party of the second part to manufacture said Cement Burial Vaults for the Counties of Middlesex, Suffolk and Norfolk, in the State of Massachusetts, and in no other place or places to the full end of the term for which said Letters Patent were granted, and to sell the same within said mentioned Counties and in no other place or places.

" Second. The party of the second part hereby agrees to manufacture three hundred vaults between the date of the execution of this agreement and the first day of January, 1904, and agrees to pay for all vaults manufactured during the life of said Letters Patent two dollars ($2) royalty on each and every vault made.

" Third. The party of the second part agrees to make payment for the royalty on the first three hundred vaults in four payments of one hundred and fifty ($150) dollars each, to be paid March 1, 1903, June 1, 1903, September 1, 1903, and January 1, 1904, and if more than three hundred vaults are manu-

factured during the period between the execution hereof and January 1, 1904, for all vaults in excess of above number, the royalty thereon to be paid January 1, 1904.

" Fourth.    After January 1, 1904, the party of the second part agrees to make returns on sworn statement to the number of vaults made, semi-annually, and to make payment of the royalties· due thereon, on the first day of July and January, every year.

" Fifth.    The party of the first part agrees to furnish moulds for the manufacture of said vaults, and the party of the second part agrees to pay cash therefor at the going prices for same.

" Sixth.    It is, however, understood that in case party of the second part ceases to manufacture said vaults at any time, that then, and in that case, moulds shall be returned to party of the first part, and surrender of this contract without any compensation.

" Seventh.    It is further understood that if party of the second part wishes to cease paying royalty, he may do so by paying to party of the first part two and one half ($2.50) dollars per thousand inhabitants of last census taken by the United States of the territory above named.

" Eighth.    The party of the second part agrees not to engage in the manufacture or handle or sell any other kind of vault during the life of said patented Lyons Burial Vault.

" In witness whereof, the parties have herewith set their hand this day and year above written.

" E. R. Taylor & Co.

The Lyons Burial Vault Company.

B. F. Lockwood, Pres."

The lease referred to above was as follows :

" This agreement made this fifteenth day of October, 1902, by and between the Lyons Burial Vault Company, of Lyons, Wayne County, New York, of the first part, and E. R. Taylor & Company, of Boston and Newport, County of Suffolk and Newport, and State of Massachusetts and Rhode Island, of the second part.

" Witnesseth, that whereas the party of the first part has, this fifteenth day of October, 1902, sold and conveyed to the party of the second part the territorial rights in and to the following ter-

ritory, viz: Norfolk, Suffolk and Middlesex Counties, in Massachusetts, for the manufacture and sale of Portable Cement Vaults, as secured by Letters Patent No. 609,358, for and during the life of said patent, to be used by said party of the second part within and throughout said territory and in no other place or places.

"Now, therefore, in consideration of said sale, and of the sum of $75.00 to be paid in cash on delivery of moulds, the party of the first part hereby leases to the party of the second part, set

| No. | No. 2 |
| No. 3 | No. |

of the moulds used in and for the purpose of manufacturing said Portable Cement Vaults for and during the full term of said Letters Patent, the same to be used only by the party of the second part, his heirs and assigns, in and upon said territory, and in no other place or places, and to be used for the purpose of manufacturing Portable Cement Vaults, to be sold only upon and in said territory.

"It is hereby understood and agreed that the party of the first part does not part with the title to said moulds, and in case the party of the second part should use said moulds or sell any Portable Cement Vault, or Vaults, outside of the territory conveyed to him, then the party of the first part had the privilege of taking possession of said moulds, and the party of the second part hereby agrees that he will surrender the same to the party of the first part.

"It is further agreed by and between the parties hereto that said moulds shall not be used by the party of the second part until the purchase price has been fully paid, and in case the party of the second part fails to pay for said moulds as above provided, that then, and in that case, the party of the first part may enter upon the premises of the party of the second part, or any other place or places, where the same may be, and retake the said moulds and rescind this contract.

"In witness whereof, the parties have hereunto set their hands the day and year first above written.

"E. R. Taylor & Company.
The Lyons Burial Vault Company.
B. F. Lockwood, President."

· On appeal to the Superior Court the case was tried before *Lawton*, J.

For the purpose of the trial it was admitted that the signatures to the contract and the lease were genuine, and in defense the defendants relied upon that part of their answer which alleged that those instruments and the defendants' signatures thereto " were obtained by the fraud and misrepresentation of the plaintiff and of the plaintiff's servants and agents," and " that said contracts or agreements were made by the defendants without consideration "; and in answer to the third count for a balance due under the lease, asserted that the lease had been cancelled and that the moulds had been returned by agreement.

The character of the material evidence is described in the opinion. In addition to the facts material to this case, it appeared that in consequence of a bill in equity brought by the plaintiff against these defendants, since the beginning of this action, the contract was cancelled and the territory was released by the defendants, and the moulds were returned to the plaintiff, as of the date of the decree, without affecting the rights of the parties to this action, and that there still had remained about seven years to run of the lease, which also was cancelled and discharged.

The defendants asked for nine rulings, among which were the following:

" 2. If the jury find that the defendant Taylor was induced to sign these contracts, by reason of the fraudulent misrepresentations of Mr. Lockwood as to these vaults, the plaintiff is not entitled to recover.

" 3. If the jury find that prior to the signing of these contracts Mr. Lockwood intentionally misrepresented the facts as to the market value, water-proof character and cost of making these vaults, or the sales that he or the plaintiff had made or were making, and the prices for vaults sold, these were fraudulent misrepresentations on the part of the plaintiff, and he is not entitled to recover."

The judge refused to make these rulings as well as the others requested. He ruled as a matter of law that the defendants had made out no defense, and ordered a verdict for the plaintiff

under clause two of the contract, with interest from the date of the writ, and for a balance of $40 as due under the lease of the moulds. The defendants alleged exceptions.

*J. A. McGeough,* for the defendants.

*G. W. Reed,* for the plaintiff.

SHELDON, J. We agree with the plaintiff that by the true construction of the principal agreement between these parties the defendants agreed absolutely to manufacture three hundred vaults between the date of the execution of the agreement and the first day of January, 1904, and to pay the fixed royalty upon them. That is the exact language of the second clause of the agreement; and if there were any possible doubt that this was their meaning, it would be removed by the express stipulation of the third clause of the agreement that the defendants would pay this precise sum in the instalments and at the respective dates therein stated, and would also pay a like royalty upon any additional vaults that they might manufacture. The fact that by the fourth clause of the agreement it was only after January 1, 1904, that the defendants were to render sworn statements and pay royalties semi-annually leads to the same conclusion.

The subsidiary agreement whereby moulds were leased and delivered by the plaintiff provided that the $75 named therein was to be paid in cash on the delivery of the moulds. This payment was to be made once for all, and was not to be affected by any subsequent cancellation of the agreement or return of the moulds.

It is equally plain that each one of these agreements was made upon a valuable consideration. The stipulations of each party furnish a full consideration for those of the other. If the agreements were fairly and honestly made, they could not be avoided or rescinded by either party, except in accordance with their own terms.

It follows from what has been said that the judge rightly refused all but the second and third of the defendants' requests for rulings. But we are of opinion that there was evidence tending to show that the defendants were induced to sign these agreements by fraudulent representations made by Lockwood; and so that this issue was for the jury. As to the weight of this evidence we of course express no opinion.

There was evidence that Lockwood, acting for the plaintiff, represented that these vaults were water tight; that water or moisture could not enter them; and that only one barrel of cement was required to make a vault.   There was also evidence that these representations were false and were known to Lockwood to be false.   True, the evidence was that Taylor said that he did not believe the vaults could be made waterproof; but there was evidence that the assurance was repeated, and Taylor testified that he finally signed the agreements on the faith of the representations made and believing them to be true.   These representations, although accompanied as it was contended that they were, by false statements of the great value of the vaults and of the prices at which they could be and were sold and of the extent of the demand for them, being as they were comparatively new articles not commonly sold in the market, might be found to have been more than mere seller's talk.  *Busiere* v. *Reilly*, 189 Mass. 518.  *Andrews* v. *Jackson*, 168 Mass. 266. *Way* v. *Ryther*, 165 Mass. 226.  *Brady* v. *Finn*, 162 Mass. 260.  *Holst* v. *Stewart*, 161 Mass. 516.  *Teague* v. *Irwin*, 127 Mass. 217.  *Savage* v. *Stevens*, 126 Mass. 207.  *Milliken* v. *Thorndike*, 103 Mass. 382.   It might be found that the defendants were not only unskilled, but wholly ignorant of the prices and values of these vaults; and the language of Devens, J. in *Dawe* v. *Morris*, 149 Mass. 188, at the top of p. 192, would be applicable.   It may very well be that mere statements of the values of the articles, however exaggerated, would be insufficient to show actionable fraud; but the defendants' testimony went much farther than this.  *Morse* v. *Shaw*, 124 Mass. 59.   And it was for the jury to determine what opportunity the defendants had for investigation, and how far they were justified in relying on Lockwood's statements.  *Long* v. *Athol*, 196 Mass. 497.   Accordingly this issue should have been submitted to the jury.

*Exceptions sustained.*