COMMONWEALTH *vs.* RAYMOND J. QUINN & others.

Hampden.    September 28, 1915. — February 8, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Larceny,* By false pretences.  *Pleading, Criminal,* Indictment.  *Evidence,* Stipu-
lation as to what a person would testify to if called as a witness, Of similar trans-
action to show intent, Competency, Best and secondary, Assessors' records.
*Practice, Criminal,* Judge's charge: illustration.

An indictment for obtaining money by false pretences, which conforms in its alle-
gations to R. L. c. 218, §§ 38, 40, and, with a bill of particulars filed on motion of
the defendants, accurately charges larceny by false pretences, will not be quashed
because the bill of particulars also contains some immaterial or some insuf-
ficient allegations.

The admission in evidence, against the defendants' exception, at the trial of an
indictment for larceny by false pretences of a statement by one of the defend-
ants that he had been offered $42,000 for certain real estate, the giving of a
mortgage upon which was a part of the transaction in question, was *held* to
have been a material error, because the statement should have been excluded on
the defendants' objection as being in the nature of mere "seller's talk," which
was not to be treated as a false representation of a material fact; but the state-
ment of the court in *Mabardy* v. *McHugh,* 202 Mass. 148, 149, that legal im-
munity for the falsehood of vendors should not be extended beyond the bounds
already established, was quoted with approval.

In the same case it was *held,* that a statement by one of the defendants, that a
certain person whom he pretended to represent was a wealthy manufacturer
of ready made clothing, could have been found by the jury to have been a false
statement of a material fact.

In the same case it was *held,* that the presiding judge properly refused to rule, at
the request of one of the defendants, that in order to convict him the jury must
find that he "met" the other two defendants "and conceived the scheme to de-
fraud;" because if the defendant who asked for the ruling was a party to the
scheme to defraud it was not necessary that there should have been an actual
meeting between him and the other defendants.

In the same case it was *held,* that a stipulation as to the facts to which certain per-
sons would testify if called as witnesses by the Commonwealth, which was
signed by the district attorney and by counsel for each of the defendants,
rightly was admitted in evidence, against the defendants' exception, because
it had a tendency to prove the falsity of a material representation made by one
of the defendants that a certain person was a man of wealth and a manufacturer
of ready made clothing.

In the same case it was *held,* that the presiding judge in his charge properly used
as an illustration a supposed representation made by the seller of a horse that the
horse was sound and kind, which could be found to be an assertion of fact and

not a mere expression of opinion, which was substantially the decision in·*Commonwealth* v. *Jackson*, 132 Mass. 16.

In the same case it was *held*, that representations, that the indorsers of certain notes that formed part of the transaction in question were men of financial responsibility and owned real estate in a city named, could have been found under the circumstances shown to have been intended and understood as statements of fact.

Under an indictment for larceny by false pretences it is not required that the false statements constituting the pretences should have been in writing; and in the present case it was *held* that R. L. c. 208, § 28, and R. L. c. 74, § 4, had no application.

In the same case evidence was admitted, against the defendants' exception, to show representations made by the defendants to a different person in a separate transaction at about the time of the transaction covered by the indictment. The evidence was offered to show the intent of the defendants by their conduct under similar circumstances, but it did not appear that the person in this other transaction was defrauded or that the sale of certain property by the defendants to him was not a perfectly fair transaction. *Held*, that the evidence was incompetent and that the exception to its admission must be sustained.

In the same case it was *held*, that the testimony of an assessor of a certain city, that, during two years in the course of which the false representations were alleged to have been made, neither one of the defendants, nor a person who with him indorsed certain notes, was assessed for any real or personal property in that city, was not admissible to show that these indorsers were not the owners of real estate in that city during the two years in question at the time when the alleged false representations were made, nor to show that the two indorsers were men without financial responsibility. And it was *intimated*, that the assessors' records for those years, which would have been the best evidence of their contents, would not have been competent evidence for the purpose for which the testimony of the assessor was admitted improperly.

INDICTMENT, found and returned on May 5, 1913, against Raymond J. Quinn, Harris Berman and Meyer Fuchs, charging that the defendants on December 13, 1912, at Springfield "certain money of the amount and of the value of $700 of the money and property of one Henry D. Bullard, in the possession of the said Henry D. Bullard, being found, then and there feloniously did steal, take and carry away, contrary to the form of statute in such case made and provided."

The bill of particulars as amended was as follows:

"And now comes the Commonwealth, in answer to the motion of the defendant Fuchs for a bill of particulars, and files a statement of particulars, as follows: That the defendant Fuchs on some day not known to the Commonwealth, in the year 1912, before December 19, 1912, conspired with the defendant Quinn and the defendant Berman at Springfield, in the County of Hampden,

for the purpose of defrauding one Henry D. Bullard as hereinafter appears.

"That the defendant Fuchs, with the defendant Quinn and the defendant Berman, acting together and in concert, for the purpose of defrauding said Bullard, aided and abetted the said Quinn in falsely pretending to act as the agent of the said Bullard in the sale of certain real estate owned and used by said Bullard as a farm in Oakham in the county of Worcester, and certain personal property used in connection with said farm, whereas in fact, the defendant Quinn was not an agent of the said Bullard but was acting with the defendant Berman and the defendant Fuchs for the purpose of defrauding said Bullard as aforesaid; that the defendant Fuchs falsely represented to the said Bullard that he desired to purchase in good faith a farm for his brother-in-law, Josef Schusler or Joseph Schisler in the city of New York; that said Josef Schusler or Joseph Schisler was a man of great wealth and a large manufacturer of ready made clothing, whereas in fact, said Schusler or Schisler was not a man of great wealth and was not a large manufacturer of ready made clothing, as the defendant Fuchs well knew, that the said Schusler or Schisler intended to come to Worcester to open a store and that he wanted a farm near Worcester as a summer home, whereas in fact, the said Schusler or Schisler did not intend to open a store in Worcester and did not desire said farm as a summer home as aforesaid; that all of said defendants, acting together and in concert as aforesaid, at said Oakham, examined said farm on or about December 19, 1912, and the defendant Fuchs made the false representations as aforesaid at that time; that the defendant Fuchs at that time and place claimed to be the attorney of the said Schusler or Schisler and to have a power of attorney to buy said farm amd personal property in his behalf; that tentative terms of sale, which subsequently became effective, were agreed upon as follows: The price of said farm and personal property to be fifteen thousand dollars ($15,000) and to be paid by a note of said Schusler or Schisler for one thousand dollars ($1,000), payable in ninety days after the date of the deed, bearing interest at six per cent per annum; a note for eleven thousand dollars ($11,000) with interest at six per cent per annum, secured by a mortgage upon said farm, payable in semi-annual instalments of two hundred and fifty dollars ($250), and payable on

demand after five years, the mortgagor to have the right to antici-
pate payments; and a note for four thousand dollars ($4,000)
to the said Bullard, payable on demand after four months, with
interest at the rate of six per cent per annum, secured by a mort-
gage on certain real estate owned by said Schusler or Schisler in
Holyoke, credit upon said last named note to be given in the sum
of one thousand dollars ($1,000), upon the payment of the note for
one thousand dollars ($1,000) hereinbefore described; all of said
notes to be indorsed by the said Fuchs and one Mehlman; that,
before said terms of sale were agreed upon, the defendant Fuchs
falsely represented the property in said Holyoke to be worth, ex-
clusive of all incumbrances thereon, at least twelve thousand dollars
($12,000), whereas in fact, said property was worth less than the
incumbrances thereon, which the defendant Fuchs well knew;
that the defendant Fuchs falsely represented that he and the said
Mehlman were men of financial responsibility and owned real
estate in said Springfield, whereas in fact the said Fuchs and
Mehlman were not men of financial responsibility and did not
own real estate in said Springfield, as the defendant Fuchs well
knew; that the defendant Quinn framed an agreement substan-
tially incorporating said terms of sale, which the said Bullard, and
the said Fuchs, pretending to act for the said Schusler or Schisler,
executed; that the following day at said Springfield, another agree-
ment was framed by an attorney at law in lieu of the agreement
prepared by the defendant Quinn, which the said Bullard, and
the said Fuchs, pretending to act for the said Schusler or Schisler,
executed; that the said agreement substantially included the
terms of sale hereinbefore set forth; that said Bullard executed
and delivered to the said Schusler or Schisler a deed of said farm
and a bill of sale of the personal property hereinbefore referred to,
and received in return therefor the notes and mortgages contem-
plated by said agreement; that the defendant Quinn, as a part of
the conspiracy to which the defendants Berman and Fuchs were
parties, thereupon agreed with said Bullard, that his commission
for effecting said sale should be seven hundred dollars ($700); that
subsequently said Bullard caused to be paid to the defendant
Berman said sum of seven hundred dollars ($700); that the
defendants Quinn and Berman, carrying out the object of said
conspiracy, to which the said Fuchs was a party, to defraud the

said Bullard, divided said seven hundred dollars ($700) between them; that all of said pretences were made by the defendant Fuchs and by those acting with him in a common purpose to defraud the said Bullard, knowing them to be false and with intent to defraud the said Bullard; that said Bullard believed said false pretences, and, acting upon such belief, performed the acts hereinbefore stated to have been performed by him."

At the close of the evidence the Commonwealth, against the defendants' exception, was allowed to file a further amended bill of particulars, which contained, besides the foregoing allegations, the following:

"That before said terms of sale were agreed upon, the defendant Quinn, as a part of the conspiracy to which the defendant Berman was a party, and the defendant Berman falsely represented the property in said Holyoke to be worth, exclusive of all incumbrances thereon, at least twelve thousand dollars ($12,000), whereas in fact said property was worth less than the incumbrances thereon, which the defendants Quinn and Berman well knew; that the defendant Quinn, as a party of the conspiracy to which the defendant Berman was a party, and the defendant Berman falsely represented that the said Fuchs and the said Mehlman were men of financial responsibility and owned real estate in said Springfield, whereas in fact, the said Fuchs and the said Mehlman were not men of financial responsibility and did not own real estate in said Springfield, as the defendants Berman and Quinn well knew;

"That the defendant Berman, as a part of the conspiracy to which the defendants Fuchs and Quinn were parties, falsely represented to the said Bullard that Fuchs had received an offer of $42,000 for the property in said Holyoke in July, 1912; that the defendant Berman falsely represented to the said Bullard that the said property in Holyoke was worth $42,000; ' that the said pretences were made by the defendant Berman and by those acting with him in a common purpose to defraud the said Bullard, knowing them to be false and with intent to defraud the said Bullard; that said Bullard believed said false pretences, and acting upon such belief, performed the acts heretofore stated' to have been performed by him;

"That the defendant Quinn, as a part of the conspiracy to

which the defendants Fuchs and Berman were parties, falsely represented to the said Bullard that Fuchs had received an offer of $42,000 for the property in said Holyoke in July, 1912; that the defendant Quinn falsely represented to the said Bullard that the said property in Holyoke was worth $42,000; that said pretences were made by the defendant Quinn and by those acting with him in a common purpose to defraud the said Bullard, knowing them to be false and with intent to defraud the said Bullard; that said Bullard believed said false pretences, and acting upon such belief, performed the acts heretofore stated to have been performed by him;

"That the defendant Fuchs, as a part of the conspiracy to which the defendants Quinn and Berman were parties, falsely represented to the said Bullard, that he, Fuchs, had received an offer of $42,000 for the property in said Holyoke in July, 1912; that the defendant Fuchs falsely represented to the said Bullard that the said property in Holyoke was worth $42,000; that said pretences were made by the defendant Fuchs and by those acting with him in a common purpose to defraud the said Bullard, knowing them to be false and with intent to defraud the said Bullard; that said Bullard believed said false pretences, and acting upon such belief, performed the acts heretofore stated to have been performed by him."

The defendants were tried before *Aiken,* C. J. Motions of the defendants to quash the indictment as more fully set forth in the bill of particulars were denied.

Evidence was introduced at the trial tending to show that the defendants Quinn and Berman were paid a commission of $700 by Henry D. Bullard of Oakham for procuring the sale to one Joseph Schusler of the city of New York of certain property in Oakham belonging to Bullard, consisting of a farm, together with certain cattle and farm implements. Schusler, who did not appear in person in the transaction, was represented by the defendant Fuchs, but it was not contended by the Commonwealth that Fuchs received any part of the commission. The Commonwealth contended that certain criminally false representations were made by the defendants as set forth in the bill of particulars filed by the Commonwealth. Material portions of the evidence are described in the opinion.

At the close of the evidence each of the defendants asked for twelve rulings, which were identical except as to the name of the defendant making the requests, and the defendant Fuchs asked for three additional rulings numbered thirteenth, fourteenth and fifteenth. The Chief Justice made the third, fourth, fifth, sixth, seventh, eighth, tenth, thirteenth and fifteenth rulings requested, or is held by the court substantially to have embodied them in his charge to the jury. The others were as follows:

"1. Upon all the evidence the defendant . . . cannot be found guilty of the crime of larceny as charged in the indictment.

"2. Upon all the evidence, the jury should find the defendant . . . not guilty of the crime charged in the indictment."

"9. If the jury find that the defendant . . . made or cooperated in representations as to Schusler being a man of wealth, such representations are as a matter of law matter of opinion and are not false representations within the meaning of the law."

"11. If Bullard, in paying the $700 to Berman and Quinn or to both or either of them, paid this money as a commission, earned by them as a result of the sale effected by them of his property, then this money was not obtained by them under false pretences.

"12. If, as a result of the sale of Bullard's farm by the defendants, Berman and Quinn, Bullard recognized a relation of debtor and creditor as between himself and Berman or Berman and Quinn and if he paid the $700 as an existing claim against him for a commission earned and said money was paid by him in settlement of said claim after the sale of his property had been actually effected and the deeds and bill of sale had passed, then this $700 was not obtained by false pretences within the meaning of the law and the defendant Berman is not guilty of the crime charged in the indictment."

"14. The jury must find that at some time, the defendant Fuchs met the defendants Quinn and Berman and conceived the scheme to defraud."

The Chief Justice refused to make any of these rulings. The jury returned a verdict of guilty against all the defendants; and the defendants jointly alleged exceptions, including exceptions to the admissibility of certain evidence.

The stipulation, referred to in the opinion, which was admitted in evidence against the defendants' exception, was signed by

the District Attorney and by counsel for each of the defendants and was as follows:

"In the above entitled case, it is hereby agreed that three witnesses who live in New York City, in the State of New York, and who were well acquainted with Joseph Schusler, alias Joseph Schisler, in November and December, 1912, and in January, 1913, would testify for the Commonwealth as follows: (Subject to the ruling of the court on the competency of such evidence and defendants' right of exception.)

"1. That said Joseph Schusler was not at the times above mentioned a man of wealth.

"2. That the said Joseph Schusler was not at said times a manufacturer of clothing.

"And it is hereby agreed that the said Joseph Schusler is the same Joseph Schusler who executed a power of attorney to Meyer Fuchs of Springfield, Massachusetts, and who acknowledged the same before William Bertisch, a Notary Public of New York City in the State of New York."

The illustration used by the Chief Justice in his charge, which is referred to in the opinion and to which an exception was taken, was as follows:

"I am going to speak to you by way of illustration, in order to make clearer the aspect to which I am at present referring. The old illustration that was used years ago, not so applicable now as then, because of the change in the circumstances by the times, I will resort to.

"In a trade for a horse, or in the selling of a horse, the seller might represent that it was sound and kind. That might be so stated as to be mere assertion of an opinion, used for the purpose of effecting a trade. It gave rise to no liability. The assertion that the animal was sound and kind might, on the other hand, be so stated that under such circumstances, particularly if the man had owned the horse for any length of time, as to import an assertion of fact, which the buyer could reasonably understand to be an assertion of fact, and if he took it, so interpreted it and bought the animal, then there would be responsibility for the assertion that the horse was sound and kind, when if it was a mere expression of opinion and ought to have been so understood there wouldn't be liability.

"So it is important to determine, if you make assertions in regard to Schusler's financial ability and his character as a manufacturer, the basis of a verdict of guilty, — and the same considerations apply to Fuchs and Mehlman, — it is important that you determine, and it is vital that you determine, whether those expressions, if used, were intended to be taken as statements of fact or were intended to be taken as statements of opinion, and said under such circumstances and surroundings that Bullard ought to have understood that they were expressions of opinion."

The case was argued at the bar in September, 1915, before *Rugg*, C. J., *Loring, Crosby, & Pierce*, JJ., and afterwards was submitted on briefs to all the justices except *Carroll*, J.

*J. B. Ely*, (*J. H. Mulcare* with him,) for the defendants Quinn and Fuchs.

*J. H. Reilly*, for the defendant Berman.

*J. O'Shea*, (*C. P. Niles*, District Attorney, with him,) for the Commonwealth.

Crosby, J. 1. The indictment charges the defendants with the larceny of $700, the property of one Bullard. It is in conformity with the provisions of R. L. c. 218, §§ 38, 40. The motions to quash were properly denied. The indictment, with the statements of particulars filed, accurately charges larceny by false pretences. As was said by this court in *Commonwealth* v. *Stevenson*, 127 Mass. 446, at page 449: "But it is no ground for quashing an indictment for obtaining money by false pretences, that it contains some immaterial allegations, or that some of the pretences charged may not be properly charged, if upon its face there is an offence stated with proper precision and formality."

2. Evidence was admitted to show that the defendant Fuchs stated to Bullard that he (Fuchs) had been offered $42,000 for the Holyoke property. This evidence was admitted subject to the exception of the defendants. The question is whether this statement could have been found to constitute a false pretence. In civil actions the rule of the common law long has been recognized that mere statements of the vendor concerning either real or personal property, where there is no warranty as to its value or the price which he has given or has been offered for it, are to be treated as "seller's talk;" that the rule of *caveat emptor* ap-

plies, and therefore they are not actionable even if the statements are false and intended to deceive. This rule has been affirmed in many decisions of this court and long has been understood to be the law of the Commonwealth. We know of no case in which this court has come to a contrary conclusion. We think it plain that, if such statements are not the ground of civil liability, with stronger reason they cannot be held to constitute a criminal offence. *Commonwealth* v. *Drew,* 19 Pick. 179. *Medbury* v. *Watson,* 6 Met. 246, 249. *Brown* v. *Castles,* 11 Cush. 348, 350. *Commonwealth* v. *Norton,* 11 Allen, 266. *Manning* v. *Albee,* 11 Allen, 520, 522. *Cooper* v. *Lovering,* 106 Mass. 77, 79. *Way* v. *Ryther,* 165 Mass. 226. *Gassett* v. *Glazier,* 165 Mass. 473. *Commonwealth* v. *Althause,* 207 Mass. 32.

We do not mean to intimate that a seller would not be civilly and criminally liable if false statements as to the price paid or offers received for the property sold are accompanied by deliberate affirmations having a tendency more effectually to deceive the purchaser. See *Way* v. *Ryther,* 165 Mass. 226, 229.

While the exceptions to the admissibility of this evidence as a false representation of a material fact must be sustained, we are of opinion that the decisions in favor of vendors' representations should not be extended. As was said in *Mabardy* v. *McHugh,* 202 Mass. 148, 149: "This court in recent years, by pointed language and by conclusions reached, has indicated a plain disposition not to extend legal immunity for the falsehood of vendors in the course of negotiations for sales beyond the bounds already established."

3. The statement that Schusler was a wealthy manufacturer of ready made clothing is a representation of his financial standing and of the nature of his business. When a representation is made concerning a person's financial standing, to the effect that he is perfectly good and able to pay his debts, or is as good as a bank, or is a man of wealth, or similar representation is made, it is sometimes held to be a mere expression of opinion or judgment; on the other hand such statements, when they are intended to be made as statements of fact to be understood and relied on as such, may be found to be more than mere statements of opinion and, if false, actionable. In such cases, it is for the jury to say whether the representations were intended as expressions of

opinion or statements of fact. *Commonwealth* v. *Jackson*, 132 Mass. 16. *Morse* v. *Shaw*, 124 Mass. 59. *Homer* v. *Perkins*, 124 Mass. 431. *Commonwealth* v. *Stevenson*, 127 Mass. 446. *Gurney* v. *Tenney*, 197 Mass. 457, 465, 466.

The latitude allowed a seller in disposing of property cannot be extended to false representations which may be found to be representations of fact and which tend to induce another to make a bargain different from the one he thought he was making. *Whiting* v. *Price*, 169 Mass. 576. The statement that Schusler was a manufacturer of ready made clothing was a statement of fact. We are of opinion that the statements taken together, that Schusler was wealthy and a manufacturer of ready made clothing, might have been found by the jury to amount to representations of facts and to be actionable if false. Accordingly the defendants' first and second requests could not have been given.

4. The third and tenth requests were covered substantially by the charge.

5. The ninth, eleventh and twelfth requests properly could not have been given, nor can the exception be sustained to the charge upon the ground that the false pretences relied upon were too remote to be a ground of criminal liability.

6. The defendant Fuchs made three separate requests for instructions. The thirteenth and fifteenth were given substantially. The fourteenth could not have been given in the form presented because, if Fuchs was a party to the scheme to defraud and participated in it, it would not be necessary that there should have been an actual meeting of Fuchs with the other defendants.

7. The stipulation admitted, subject to the exception of the defendants, was clearly admissible, as it had a tendency to prove the falsity of the representation that Schusler was a man of wealth and a manufacturer of ready made clothing.

8. The illustration given by the judge to the jury was well calculated to point out the difference between a statement of fact and the expression of an opinion. It was substantially in accord with the instructions given in *Commonwealth* v. *Jackson*, 132 Mass. 16, and which were held to be correct. The exception to this part of the charge is overruled.

9. The alleged representations to Bullard that Fuchs and Mehlman, the indorsers on the notes, were men of financial re-

sponsibility and owned real estate in Springfield, could have been found, under the circumstances, to have been intended and understood as statements of fact, upon the same ground that the representations concerning Schusler could have been found by the jury to have been representations of fact. The exception to the admission of evidence relating to these representations cannot be sustained. *Commonwealth* v. *Stevenson,* 127 Mass. 446. *Morse* v. *Shaw,* 124 Mass. 59. *Homer* v. *Perkins,* 124 Mass. 431.

The objection that the false pretences must have been in writing is not tenable. R. L. c. 208, § 28, has no application to cases of this kind, nor does R. L. c. 74, § 4, apply. *Walker* v. *Russell,* 186 Mass. 69. *Belcher* v. *Costello,* 122 Mass. 189.

10. There was evidence to show that one Cadieux, in December, 1912, sold a parcel of real estate to Schusler, and that in that sale the defendant Fuchs acted for Schusler and the defendants Quinn and Berman acted as real estate brokers. Evidence of representations made to Cadieux was offered to show that the conduct of the defendants at that time was similar to their conduct in this case; that the sale occurred at about the same time as the sale by Bullard; and that similar representations were made in both transactions.

This evidence was offered to show the intent of the defendants in their dealings with Bullard. "Conduct of one on another occasion reasonably near in time under similar circumstances if appearing to be parts of a comprehensive scheme by which different persons are to be defrauded, may have an important bearing upon his purpose in doing a particular act." *Commonwealth* v. *Farmer,* 218 Mass. 507, 512. *Commonwealth* v. *Riches,* 219 Mass. 440.

There is no evidence to show that Cadieux was defrauded, or that the sale of his property was not a perfectly fair transaction. The sale was fully consummated, and so far as appears in the record, there is nothing to indicate that Cadieux was induced to part with his property by reason of any fraud practiced upon him. For these reasons, the evidence relating to the sale by Cadieux was incompetent, and the exception to its admission must be sustained.

11. The witness Lawton, an assessor of the city of Springfield, testified that during the years 1912 and 1913 neither the defendant

Fuchs nor Mehlman was assessed for any real or personal property in that city. We are of opinion that this evidence was not admissible to show that they were not the owners of real estate in Springfield in December, 1912, when the alleged false representations were made. It was merely hearsay. The evidence was equally incompetent to prove that Fuchs and Mehlman were men without financial responsibility. It is to be observed that the evidence offered was not the assessors' records for those years, and so it was not the best evidence of those facts, although we do not mean to intimate that the records would have been competent. In *Commonwealth* v. *Heffron,* 102 Mass. 148, this court said: "The book of assessments of taxes, made and kept by the assessors in the performance of their official duty . . . is doubtless competent evidence of the facts therein stated in all cases relating to the assessment or collection of the tax. . . . How far it is admissible for any other purpose, and in controversies between persons not claiming rights under it, is a question upon which the authorities are somewhat obscure." It was held by this court that the assessment of a man's poll and personal property in one town was no evidence of his domicil as against another town. *Mead* v. *Boxborough,* 11 Cush. 362. The valuation and assessment of real estate is no evidence of its value as between third persons. *Flint* v. *Flint,* 6 Allen, 34. *Kenerson* v. *Henry,* 101 Mass. 152. See Sts. 1913, c. 401; 1915, c. 281. In *Commonwealth* v. *Heffron, supra,* it was held that the record of the assessment was not admissible to prove that a parcel of land was situated in the town where the assessment was laid. See *Downey* v. *Lancy,* 178 Mass. 465, 467; *Jordan* v. *Carberry,* 185 Mass. 181.

In *Enfield* v. *Woods,* 212 Mass. 547, the defendant claimed title to the land in controversy on account of the adverse possession of her husband for twenty-three years. Before the trial her husband had died. The plaintiff contended that it entered into possession under a parol gift in 1814, and had held exclusive adverse possession ever since. This court held that as the husband, if alive, could have been called by the plaintiff as a witness and forced to testify that during all the time it was claimed he was in adverse possession of the land he never paid a tax upon it, it would be evidence that he was not in possession of it as owner during that time; and that such testimony would be circumstantial evidence against the

defendant's claim of adverse possession under a claim of ownership. The valuation lists showed that the locus was not taxed to any one during these twenty-three years, but was noted on the books of the assessors "as town property and exempt under the law." This court held that the valuation lists were admissible, because if land is not entered upon them it is not taxed, and if not taxed, no tax would have been paid thereon by the defendant's husband; and evidence that it was not taxed to him during this whole period would be evidence that he was not in exclusive adverse possession as owner during that time.

*Enfield* v. *Woods* cannot be considered as authority for the admission of the assessors' records in this case. The valuation lists in that case were not admitted as evidence of title to the locus, but were held competent only as circumstantial evidence. tending to show the character of the possession and occupation of the land by the defendant's husband. If he paid no taxes upon the land during the entire period, it was evidence that such possession was not adverse to the plaintiff town. See *Whitman* v. *Shaw*, 166 Mass. 451, 461.

A large number of exceptions were saved, but as there must be a new trial, we do not consider it necessary to pass upon all of them, as the questions presented may not arise again. Let the entry be

*Exceptions sustained; new trial granted.*