Louis Kabatchnick *vs.* Hanover-Elm Building Corporation & another.

Suffolk. November 8, 1951. — January 31, 1952.

Present: Qua, C.J., Lummus, Ronan, Spalding, & Counihan, JJ.

*Deceit. Damages, For tort.*

A statement made by the owner of real estate to a lessee thereof shortly before his lease was to expire, that the owner had had a bona fide offer from a third person to take a lease of the premises at a certain rental much higher than the lessee was paying, was a representation of fact which rendered the owner liable to the lessee for deceit if it was knowingly false and made with intent that the lessee should rely on it and was relied upon by him to his substantial damage in entering into a new lease at such higher rental.

In an action for deceit by a lessee against the lessor based on a false representation inducing the plaintiff to enter into a new lease at a much higher rental than he had been paying, substantial damage to him was sufficiently set forth by an allegation in the declaration that "the rental value of the . . . [leased] premises was not worth" such higher rental, "but was worth only" the previous rental, "all to his great damage."

Tort. Writ in the Superior Court dated April 12, 1948. The case was heard on demurrer by *Forte,* J.

B. Goldman, (S. Blumenthal with him,) for the plaintiff.

J. B. Abrams, for the defendants.

SPALDING, J.   In this action of tort for deceit the material averments of the declaration are as follows: The plaintiff, who was engaged in selling novelties, toys, and games at retail, occupied as a tenant under a written lease the first floor and basement of certain premises on Bromfield Street, Boston.   The annual rental reserved in the lease was $4,500. The lease was dated January 15, 1945, and ran to March 1, 1947.   Upon acquiring title to the premises in November, 1946, the defendants represented to the plaintiff "that they had a bona fide offer from one Melvin Levine for the leasing of the said premises to him at the rate of $10,000 per year and that unless the plaintiff met that offer and signed a lease for twelve (12) years at $10,000 per year the defendants would evict the plaintiff at the end of his lease on March 1, 1947."   Believing these representations and in reliance upon them the plaintiff on December 6, 1946, entered into a written lease with the defendant Hanover-Elm Building Corporation for the term of twelve years from January 1, 1947, at an annual rental of $10,000 payable in monthly instalments of $833.33.   At the time that this lease was executed the defendants demanded as a condition to its execution that the plaintiff pay the sum of $833.33 beginning with the month of December, 1946.   The plaintiff complied with this demand and has thereafter paid this amount monthly. "In truth and in fact the representations made by the defendants to the plaintiff . . . [concerning the offer purporting to have been made by Melvin Levine] were false and known by the defendants to be false and were made by them with the intent that the plaintiff rely thereon and execute the said lease and make the aforesaid payments."   These facts were recently discovered by the plaintiff and "if he had known of the true facts he would not have executed the said lease."   "The rental value of the said premises," it is alleged, "was not worth $10,000 per year for twelve (12) years, but was worth only $4,500 per year; all to . . . [the plaintiff's] great damage."

Kabatchnick v. Hanover-Elm Building Corp.

The case comes here on the plaintiff's appeal from an order sustaining the defendants' demurrer. The demurrer included several grounds, the first of which and the one on which it was sustained was that the declaration does not state a case.

In *Commonwealth* v. *Quinn*, 222 Mass. 504, the defendants were tried on an indictment charging them with larceny by means of false pretences. At the trial, as proof of a false pretence, evidence was admitted, subject to the defendants' exception, to show that one of the defendants, Fuchs, had stated to Bullard (the victim of the alleged larceny) that he (Fuchs) had been offered $42,000 for certain property which was to be transferred to Bullard in exchange for certain real and personal property owned by the latter. In sustaining the exception this court said, "In civil actions the rule of the common law long has been recognized that mere statements of the vendor concerning either real or personal property, where there is no warranty as to its value or the price which he has given or has been offered for it, are to be treated as 'seller's talk'; that the rule of caveat emptor applies, and therefore they are not actionable even if the statements are false and intended to deceive. This rule has been affirmed in many decisions of this court and long has been understood to be the law of the Commonwealth. We know of no case in which this court has come to a contrary conclusion. We think it plain that, if such statements are not the ground of civil liability, with stronger reason they cannot be held to constitute a criminal offence" (pages 512–513).

The rule just quoted finds support in a long line of decisions. *Medbury* v. *Watson*, 6 Met. 246, 259-260. *Brown* v. *Castles*, 11 Cush. 348, 350. *Hemmer* v. *Cooper*, 8 Allen, 334. *Manning* v. *Albee*, 11 Allen, 520, 522. *Cooper* v. *Lovering*, 106 Mass. 77, 79. *Way* v. *Ryther*, 165 Mass. 226, 229. *Boles* v. *Merrill*, 173 Mass. 491, 494. *Shikes* v. *Gabelnick*, 273 Mass. 201, 204. If they are to be followed the demurrer was rightly sustained, for the defendants' statement as to the amount of rent that another had offered

to pay must under these decisions be treated as "seller's talk."

But the plaintiff earnestly argues that these decisions are not in harmony with the trend of modern authority and ought not to be followed. From an examination of the law in other jurisdictions it would appear that the weight of authority would permit recovery on proof of the facts pleaded here. *Moline Plow Co.* v. *Carson*, 72 Fed. 387, 391–392 (C. C. A. 8). *Cahill* v. *Readon*, 85 Colo. 9. *Ives* v. *Carter*, 24 Conn. 392, 405. *Brody* v. *Foster*, 134 Minn. 91. *Isman* v. *Loring*, 130 App. Div. (N. Y.) 845, 850. *Seaman* v. *Becar*, 15 Misc. (N. Y.) 616. *Caples* v. *Morgan*, 81 Ore. 692, 697–702. *Smith, Kline & French Co.* v. *Smith*, 166 Pa. 563. *Strickland* v. *Graybill*, 97 Va. 602. *Hull* v. *Doheny*, 161 Wis. 27. Prosser on Torts, pages 757–758. Harper on Torts, § 223.

Most, if not all, courts hold that there are certain types of statements upon which a purchaser is not justified in placing reliance. Thus a statement that an article is made of the finest material obtainable, that a particular automobile is the most economical car on the market, or that a certain investment is sound and will yield a handsome profit, and similar claims are generally understood to be matters of opinion and if reliance is placed on them and they turn out otherwise the law does not afford a remedy.[1] "The law recognizes the fact that men will naturally overstate the value and qualities of the articles which they have to sell. All men know this, and a buyer has no right to rely upon such statements." *Kimball* v. *Bangs*, 144 Mass. 321, 324. It was aptly said by Holmes, J., in *Deming* v. *Darling*, 148 Mass. 504, 506, that this "rule of law is hardly to be regretted, when it is considered how easily and insensibly words of hope or expectation are converted by an interested memory into statements of quality and value when the expectation has been disappointed."

---

[1] Many cases illustrating this principle are collected in footnote 166 in Harper and McNeely, A Synthesis of the Law of Misrepresentation, 22 Minn. L. Rev. 939, at pages 1004–1005.

But the statement in the case at bar was not of that class. The defendants represented to the plaintiff that they had received a bona fide offer from Levine to take a lease of the premises at an annual rental of $10,000. This was more than a statement of opinion; it was a representation of an existing fact. Why, on principle, should one making such a representation be immune from liability if it was false; provided the other elements required by the law of deceit are present?

The rule now relied on by the defendants came into our law more than one hundred years ago and appears to be based on earlier English cases. This court in later decisions, although following this rule, does not seem to have done so with enthusiasm and has repeatedly stated that the rule would not be extended beyond limits already established. See *Boles* v. *Merrill*, 173 Mass. 491, 494; *Mabardy* v. *McHugh*, 202 Mass. 148, 149, and cases cited; *McKinley* v. *Warren*, 218 Mass. 310, 313; *Commonwealth* v. *Quinn*, 222 Mass. 504, 513. It was said by Rugg, J. (as he then was), in *Mabardy* v. *McHugh*, 202 Mass. 148, 150, that "This judicial attitude perhaps reflects an increasingly pervasive moral sense in some of the common transactions of trade. While the science of jurisprudence is not, and under present conditions cannot be, coextensive with the domain of morality, nor generally undertake to differentiate between motives which mark acts as good or bad, yet it is true, as was said by Mr. Justice Brett, in *Robinson* v. *Mollett*, L. R. 7 H. L. 802, 817, that 'The courts have applied to the mercantile business brought before them what have been called legal principles, which have almost always been the fundamental ethical rules of right and wrong.' This is only a concrete expression of the broader generalization that law is the manifestation of the conscience of the Commonwealth."

The time has come, we think, to depart from the rule stated in *Commonwealth* v. *Quinn*, in so far as it affords no remedy for representations of the sort here involved. Not only is it opposed to the weight of authority but it is diffi-

cult to justify on principles of ethics and justice. Moreover, several exceptions have been engrafted upon the rule whereby liability is imposed in situations that do not differ materially from those falling within it. One of these exceptions is that if the vendor in selling real estate falsely states the amount of rent he is receiving the representation is actionable. *Brown* v. *Castles*, 11 Cush. 348, 350. *Exchange Realty Co.* v. *Bines*, 302 Mass. 93, 97. The reason given for the exception in *Brown* v. *Castles* is that the amount of the rent lies "in the private knowledge of the landlord and tenant" (page 350). But similar reasons can be urged with respect to representations concerning the purchase price or an offer from a third person. Another exception is that if the false representation of the sort here involved is made by a third person rather than the vendor the plaintiff may recover. *Medbury* v. *Watson*, 6 Met. 246, 260. In other cases there are dicta, if not actual holdings, to the effect that false representations as to price paid, value, offers and the like, if accompanied by further deliberate affirmations having a tendency to deceive the purchaser, are actionable. See *Manning* v. *Albee*, 11 Allen, 520, 522; *Way* v. *Ryther*, 165 Mass. 226, 229; *Commonwealth* v. *Quinn*, 222 Mass. 504, 513. The line between such a case and a case like the present is not always easy to draw. Apparently liability is made to depend on the degree of thoroughness with which the fraud is perpetrated. In *McKinley* v. *Warren*, 218 Mass. 310, the plaintiff was permitted to recover against a defendant who had obtained a loan of $7,000 from the plaintiff on the representation that it was to be used to acquire stock under an option to purchase for $10,000, whereas the option was in fact for $5,000. In *Sheffer* v. *Rudnick*, 291 Mass. 205, a false representation by a vendor of real estate to a prospective purchaser that a bank had lent $45,000 on the property was held to be actionable. The representation in the case at bar was just as likely to deceive, we think, as those in the cases just reviewed.

Stare decisis is a salutary principle, because in most matters a settled rule on which reliance can be placed is of more

importance than the precise form of the rule. But if stare decisis must always be paramount the law would be deprived of its capacity for growth and adaptation, attributes which have been considered to be "the peculiar boast and excellence of the common law." *Hurtado* v. *California*, 110 U. S. 516, 530. See *Funk* v. *United States*, 290 U. S. 371, 383. Moreover, the reasons for the doctrine of stare decisis are less strong in a case like the present than in one where a rule of property or contract is involved. See *Bessey* v. *Salemme*, 302 Mass. 188, 210; *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92; *Galbraith* v. *Levin*, 323 Mass. 255. Compare *Duncan* v. *New England Power Co.* 250 Mass. 228, 234.

It follows, therefore, that the demurrer ought not to have been sustained on the first ground.

Of the remaining grounds [1] set forth in the demurrer only one, the fourth, need be discussed, and this may be disposed of briefly. In an action of tort for deceit the plaintiff must prove as part of his case that he sustained damage, and this must be something more than nominal damages. *Connelly* v. *Bartlett*, 286 Mass. 311, 315. *Pearl* v. *Wm. Filene's Sons Co.* 317 Mass. 529, 532. The declaration here sufficiently alleged damage in the allegation "that the rental value of the said premises was not worth $10,000 per year for twelve (12) years, but was worth only $4,500 per year; all to his great damage." It may fairly be inferred from this allegation that the plaintiff was worse off financially by reason of the defendants' fraud. It was not necessary that he spell out in detail in the declaration his theory of damages. See *Kilroy* v. *Barron*, 326 Mass. 464. Compare *Berenson* v. *Mahler*, 326 Mass. 305, 308.

---

[1] These are: "2. That the declaration is defective in that it fails to disclose whether or not the plaintiff is still occupying the premises. 3. That the declaration is defective in that it fails to disclose whether or not the plaintiff ratified and confirmed the lease in question by electing to remain on the premises thereunder after knowledge of the alleged fraud. 4. That the declaration is defective in that it fails to set forth in what manner the plaintiff has sustained any damage. 5. That the declaration is defective in that it fails to disclose the time when the plaintiff discovered the alleged fraud, the number of months which have elapsed since the alleged fraud, and the number of months the plaintiff has elected to remain on the premises since the alleged fraud."

The order sustaining the demurrer is reversed, and an order is to be entered overruling the demurrer.

*So ordered.*